IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 JAN 26  P 12: 25

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| BRIDGEWAY MOBILE DIAGNOSTICS, LLC, an Alabama Limited Liability Company, and DONNA HOOVER, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | CASE NO. 2:07-CV-76-WKW |
| TODD P. LINDLEY d/b/a LINDLEY & ASSOCIATES; THEODORE J. HOLT; HACKARD & HOLT, a Partnership; PHILIP O. WATTS; WATTS & WATTS, a partnership; AYLSTOCK, WITKIN & SASSER, a Florida Professional Limited Company, | * * * * * * * * | **TEMPORARY RESTRAINING ORDER REQUESTED**  **ORDER TO SEAL REQUESTED** |
| Defendants. | * * | **JURY TRIAL REQUESTED** |

## VERIFIED COMPLAINT

Plaintiffs Bridgeway Mobile Diagnostics, LLC and Donna Hoover ("Plaintiffs") complain against Defendants as follows:

### SUBJECT MATTER JURISDICTION

1. This Court has subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C.A. § 1332, ¶ 2. This action is civil in nature and involves, exclusive of interest and cost, a sum in excess of $75,000.00. Every issue of law and fact is wholly between Plaintiffs who are citizens of states different from those of the Defendants.

**PARTIES**

2.     Plaintiff Bridgeway Mobile Diagnostics, LLC, is an Alabama Limited Liability Company with its principal place of business located in Troy, Alabama.   Bridgeway is composed of Plaintiff Donna Hoover and her husband Dr. Jason Hoover.   Plaintiff and her husband are citizens of and domiciled in the State of Alabama with their principal residence located at 1331 County Road 7, Troy, Alabama.  The Hoovers temporarily reside in the State of Georgia while Dr. Hoover participates in a medical residency program.  The Hoovers intend to return to Alabama after the completion of Dr. Hoover's medical residency program.  Their driver's licenses and vehicle registrations remain with the State of Alabama, they pay taxes in Alabama and are registered to vote in the State of Alabama.  The two Plaintiffs are collectively referred to as "Bridgeway".

3.     The Defendant Todd P. Lindley is a citizen of and domiciled in the State of Texas.   The Defendant Lindley does business as Lindley & Associates, an unincorporated association engaged in the practice of law with its offices located at 8409 Pickwick Lane, Suite 385, Dallas, Texas, and whose partners, if any, are citizens and domiciled in a state other than the State of Alabama.   These two Defendants are hereinafter collectively referred to as "Lindley".

4.     The Defendant Theodore "Ted" J. Holt  is a citizen of and domiciled in the State of California.  Defendant Hackard & Holt is a California

2

partnership which is, and was at all times mentioned below, engaged in the practice of law with its offices located at 11335 Gold Express Drive, Suite 105, Gold River, California, and whose partners are, together with the states in which they are citizens and domiciled, Michael A. Hackard, California, and Theodore J. Holt, California. None of the partners of the Defendant Hackard & Holt are citizens or domiciled in the State of Alabama. These Defendants are hereinafter collectively referred to as "Holt".

5.    The Defendant Phillip "Phil" O. Watts (Watts) is a citizen of and domiciled in the State of Oklahoma. Defendant Watts & Watts is an Oklahoma unincorporated association or partnership which is, and was at all times mentioned below, engaged in the practice of law with its offices located at the Hightower Building, Suite 501, 101 North Hudson, Oklahoma City, Oklahoma, and whose partners are, together with the states in which they are citizens and domiciled: Brenda Q. Watts, Oklahoma; and Phillip O. Watts, Oklahoma. None of the partners of Defendant Watts & Watts are citizens or domiciled in the State of Alabama. These Defendants are collectively referred to as "Watts".

6.    The Defendant Aylstock, Witkin & Sasser, PLC (Aylstock) is a Florida Professional Limited Liability Company which is, and was at all times mentioned below, engaged in the practice of law with its offices located at 4400 Bayou Boulevard, Suite 58, Pensacola, Florida and 55 Baybridge Drive, Gulf Breeze, Florida, and whose members are, together with the states in

3

which they are citizens and domiciled:  Bryan F. Aylstock, Florida; Justin G. Witkin, Florida; Joshua A. Jones, Florida; Douglass A. Kreis, Florida; Neil D. Overholtz, Florida; Russell H. Rein, Florida; R. Jason Richards, Florida; and Kenneth W. Smith, Florida.  None of the members of Defendant Aylstock are citizens or domiciled in the State of Alabama.

## VENUE

7.    Venue is proper pursuant to 28 U.S.C.A. § 1391(a) in that some or all the claims alleged below arose in Troy, Alabama and Montgomery, Alabama and other locations in the Middle District of Alabama.    Defendants' clients were tested within the State of Alabama; the echocardiogram tapes were read by physicians in Montgomery, Alabama; the Plaintiffs created and stored records of and pertaining to the clients tested in the Middle District of Alabama and the Defendants communicated to the Plaintiffs in Montgomery, Alabama.

8.    Additionally, Defendant Aylstock is presently doing business in counties within the jurisdiction of the Middle District of Alabama.  Aylstock member Bryan Aylstock is, and has been, actively practicing law in the State of Alabama and represents a plaintiff in at least one case pending in a county within the jurisdiction of the Middle District of Alabama, *Connis Davis-Young, et al. v. Wyeth, Inc., et al.,* Case No. 46-cv-2004-61 (Macon County).  Furthermore, Mr. Aylstock is a member of the Alabama State Bar,

4

and the Defendant Aylstock has litigated many cases in the State of Alabama.

## BACKGROUND

9.     On or about January or February 2002, Plaintiff was contacted at its offices in Alabama by the Defendant Lindley law firm about providing echocardiogram testing and screening services in connection with potential clients for Defendants Lindley, Watts, Aylstock and Holt for their potential representation in mass tort cases known as Fen-Phen litigation ("Fen-Phen"). Plaintiff orally agreed to perform such services while in Alabama.

10.    The Defendant law firms agreed to pay Plaintiffs for services rendered in connection with the administration, testing and screening potential Fen-Phen clients.

11.    A written contract was executed between the Plaintiffs and the Defendant Lindley which was agreed to, ratified or acquiesced in by Defendant law firms Watts, Aylstock and Holt.  In connection with the administration, testing and screening of the potential Fen-Phen clients, the Plaintiffs were directed by Defendant Lindley to contact individual members of the respective Defendant law firms, and thus contacted them, either directly or indirectly, and either in person or by telephone or other correspondence.

12.    At the suggestion, request or direction of Defendant law firms, the Plaintiffs undertook to retest, rescreen and have reread by physicians

any new tape or old tape and otherwise transmitted documents to the satisfaction of the Defendant law firms.

13.    The screening tests were conducted in the states of Alabama, Mississippi, Oklahoma, California, Florida and other states within these United States.

14.    In order to accommodate the requests of the Defendant law firms, Plaintiff contracted to lease and purchase two new ultrasound CYPRESS machines to more quickly facilitate the testing desired by the Defendant law firms and to produce the tape or documentation requested by said Defendant law firms.    The acquisition of these two new machines required the Plaintiffs to obligate themselves to pay an additional $119,000.00.  As a result of the failure of said law firms to pay Plaintiffs as agreed, the machines were foreclosed on, repossessed and a deficiency balance assessed against the Plaintiffs.

15.    In connection with the testing and screening of potential clients for the Defendant law firms, the Plaintiffs tested approximately 3,124 individuals and incurred time, travel and lodging expense.

16.    The Plaintiffs agreed to charge and the Defendants agreed to pay $200 per person tested, regardless of whether that person tested negative or positive as a potential mass tort Fen-Phen client.  The Defendants also agreed to pay travel expenses at 32.5 cents per mile and $35.00 per diem.

6

17.    In  further  consideration  of  Plaintiffs'  promptness,  full-time devotion to the Defendant law firms' client testing, lease/purchasing the new machines as alleged in paragraph 14 above, and incurring motel, travel and daily  expense,  the  Defendant  law  firms  agreed  to  pay  an  additional $1,000.00 for each potential client who tested positive and on whom a settlement from the manufacturers of Fen-Phen was received.

18.    The  Defendant  Lindley  made  a  partial  payment  under  the agreement of expenses and fees in the approximate amount of $45,000.00.

19.    The Defendant law firms jointly participated, advertised, assisted in  screening  and  directed  Plaintiffs  in  testing  and  screening  and  the transmittal of tapes, physician reads and the coordination and scheduling of potential clients at testing sites.  At all times, Defendants Watts, Aylstock and Holt acted with the knowledge that they were accepting services and, in fact benefiting, from an Alabama company.  Furthermore, Defendant Lindley held the other Defendants out to Plaintiffs as authorized to direct certain of Plaintiffs' services, and those Defendants did direct certain of the services and  they  held  themselves  out  as  having  the  authority  to  direct  those services under the agreement. The Defendants either personally appeared in the Middle District of Alabama, or otherwise communicated by telephone or correspondence within the State of Alabama, and within the Middle District of  the  State  of  Alabama  to  the  Plaintiffs  in  connection  with  the administration, testing and reading of the screening process for clients and

potential clients.  The Defendants also advertised their services to potential Fen-Phen claimants in the State of Alabama and knowingly benefited from the diagnostic reading services of three Montgomery, Alabama doctors, Doctors Salvia, Garcia and Brazzel.    Defendant Lindley often sent representatives to Alabama to interview potential claimants prior to Plaintiff performing its testing services. Plaintiffs tested Alabama citizens, at the direction of the Defendants and pursuant to the agreement, in at least five locations in Alabama.

20.    The Plaintiffs generated a log of all testing conducted by them beginning in 2002 and transmitted that log to the Defendant law firms.  The log contains the date of the test, the site of the test, the name of the doctor who made the first and, if applicable, the second reading and whether or not the potential client tested positive or negative.

## **COMPLAINT**

### **COUNT I**
### **(Breach of Contract)**

21.    Plaintiffs incorporate and adopt herein by reference all foregoing allegations 1 through 20 as if specifically set out herein.

22.    Plaintiffs agreed to test potential Fen-Phen clients for the Defendant law firms.

23.    The Defendant law firms agreed to pay $200.00 per test initially and, upon receipt of settlement funds, to pay an additional $1,000.00 per client for any client who tested positive.

24.    The Plaintiffs fulfilled all conditions on their part, but in December 2006, the Defendant law firms breached the contract by failing to pay Plaintiffs $200.00 per test and by failing to pay any bonus or additional sum on those Fen-Phen clients who tested positive after settlement funds were received.

25.    As a proximate consequence and result of the breach of said contractual agreement by the Defendant law firms on or about December 2006, the Plaintiffs were injured and damaged in the amount of approximately $600,000.00 less partial payment; loss of $425,000.00 on all Fen-Phen clients who tested positive and on whom a settlement has been received; and loss of interest on said sums.    The Plaintiffs have incurred legal expense in connection with the foreclosure of the ultrasound machines and in the prosecution of this matter and have incurred a deficiency judgment in the amount of $55,000.00 together with interest thereon.    The Plaintiffs have incurred legal expense in connection with the enforcement and collection of this contract.    The individual Plaintiff Donna Hoover has incurred great mental anguish, and this contract for personal services is the type which would cause great mental anguish upon a breach thereof.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

## COUNT II
## (Breach of Settlement Agreement)

26.    Plaintiffs incorporate and adopt herein by reference all of the foregoing allegations contained in paragraphs 1 through 25 above as if fully set out herein.

27.    On or about March 2, 2005, Plaintiffs and Defendants reached a settlement arising out of the services performed by the Plaintiffs in connection with the administration, testing, reading and screening of Fen-Phen clients.  A copy of that Letter of Understanding, signed by Defendant Lindley, is marked Exhibit A, attached hereto and specifically incorporated herein by reference.

28.    The agreement reached in the Letter of Understanding of March 2, 2005, was that Plaintiffs were to receive $10,000.00 within sixty (60) days of execution of the Letter of Understanding and to receive the balance of the $600,000 at the rate of $1,500.00 per client that was referred to the Defendant law firms from the settlement proceeds.  In said agreement, Defendant Lindley represented that 453 cases of clients were handled as positive cases by Lindley and five other law firms.  Defendant Lindley represented that he would forward the master list to each firm for administration of payment of $1,500.00 per case to the Plaintiffs upon receipt of class settlement funds.  Upon information and belief, Defendants Holt, Watts and Aylstock authorized Lindley to negotiate and enter into said agreement on their behalf.

10

29.    Within 60 days from the date of execution of the Letter of Understanding, the payment of $10,000.00, in two separate checks, was forwarded to the Plaintiffs' attorney.

30.    On April 21, 2005, Defendant Lindley sent correspondences to the Defendant law firms regarding the above-referenced agreement reached with the Plaintiffs, enclosed a master list of clients on which the Plaintiff "originally performed the technician services," and on which the Plaintiff "should receive payment."  Letters dated April 21, 2005, to the Defendant law firms are respectively marked Exhibits B, C and D, attached hereto and specifically incorporated herein by reference.

31.    On or about August 31, 2005, Honorable Jack B. Krona, Jr., attorney for Defendant Lindley, notified the Plaintiffs that the Defendant law firms agreed to honor the terms of the Letter of Understanding.  A copy of that letter is marked Exhibit E, attached hereto and specifically incorporated herein by reference.

32.    Along with the April 21, 2005, letter to each Defendant law firm, each Defendant law firm was also served with a copy of the Letter of Understanding on or about March 2, 2005.  See attachment to Exhibits B, C and D, attached hereto and specifically incorporated herein by reference.

33.    On or about October 10, 2005, Defendant Lindley again transmitted identical copies of the Letter of Understanding to the Defendant

law firms.  A copy of that letter is marked Exhibit F, attached hereto and specifically incorporated herein by reference.

34.  At various times after receipt of notice of the Letter of Understanding, the Defendants Aylstock, Watts and Holt acknowledged receipt of said Letter of Understanding, agreed to honor the commitments contained therein, agreed to pay Plaintiffs $1,500.00 per referred Fen-Phen client case per the list of referral clients and to otherwise honor that agreement.  For example, on or about January 2006, the Aylstock firm furnished Plaintiffs a list of some 93 clients referred by Defendant Lindley.  A copy of that list of clients is marked Exhibit H, attached hereto and specifically incorporated herein by reference.  On or about January 24, 2006, Defendant Phil Watts of the Watts law firm advised that he would honor the March 2, 2005, agreement.  He further indicated that Bridgeway should expect to receive some $1,500.00 per client or a total of about $34,500.00 from the clients referred to him by Lindley.  On several occasions, Ted Holt and other members of the Hackard & Holt firm acknowledged receipt of the Letter of Understanding, acknowledged their duty and obligation under the Letter of Understanding and committed to pay the funds to the Plaintiffs.  As recently as December 14, 2006; January 3, 2007; and January 10, 2007, the Defendant Holt firm has received information on the names of those Fen-Phen clients tested by the Plaintiffs.  The Defendants intended, at the time said Letter of Understanding and contract was created, to bestow a direct

benefit upon the Plaintiffs, as the intended beneficiary of said understanding or contract.

35.    The Plaintiffs are informed and believe and, upon such information and belief, allege the facts to be that the Fen-Phen manufacturer has reached a settlement with the Fen-Phen clients, that funds have been transmitted to the Defendant law firms, and that in some instances, funds have been distributed to the individual clients without payment to the Plaintiffs.  This information is based in part upon the receipt of a letter dated January 3, 2007, from the Defendant Lindley addressed to Honorable Justin G. Witkin, Esq., of the Defendant Aylstock firm.  That letter instructed the Aylstock firm to hold off on direct payments.  The letter indicates that some type of negotiation is ongoing between the Plaintiffs and Defendant Lindley and otherwise indicates that the Defendant law firms may not be bound by previous agreements and instructions.  A copy of that letter is marked Exhibit G, attached hereto and specifically incorporated herein by reference. Nothing contained in the parties' agreement allows Defendants to withhold payments to Plaintiffs based upon a request of Lindley to that effect.

36.    While Plaintiffs met in Birmingham with Defendant Lindley, at no time did the Plaintiffs indicate they were interested in negotiating a settlement or reaching any resolution short of full payment.  The suggestion, after all the agreements, instructions and correspondence that the Plaintiffs

may somehow "interfere" with any agreement between the Defendant law firms and Defendant Lindley is absurd.

37.    Another indication that funds have been received and in some cases distributed is a settlement distribution sheet on a client which indicates that the Defendant Aylstock firm withheld $1,500.00 of the client's funds for payment of ultrasound testing conducted by the Plaintiffs. A copy of that settlement sheet is marked Exhibit I, attached hereto and specifically incorporated herein by reference.

38.    Although Plaintiffs have complied with all the conditions on its part, including the forbearance of filing a lawsuit or lien on any of the Defendant law firms, and, after receiving assurances from the law firms that each law firm had received a copy of the Letter of Understanding and would agree to honor the Letter of Understanding, the Defendant law firms on or about December 2006 breached the Letter of Understanding and their commitment to the Plaintiffs.

39.    As a proximate consequence and result of the breach of agreement or Letter of Understanding, Plaintiffs were injured and damaged as alleged in paragraph 25 above which is specifically incorporated herein by reference as if fully set out herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

14

## COUNT III
### (Breach of Third-Party Contract)

40. Plaintiffs incorporate herein by reference the foregoing paragraphs 1 through 39 as if fully set out herein.

41. The Letter of Understanding dated March 2, 2005, the subsequent transmittal of that Letter of Understanding to the Defendant firms, their acknowledgment and acquiescence and commitment to honor the terms of the agreement is a contract between the Defendant Lindley and the Defendant law firms which intends to and does confer a direct benefit upon the Plaintiffs; the Defendant law firms had notice of that direct benefit; and it is reasonably foreseeable that the Plaintiffs would suffer in the event the Defendants did not honor the agreement or otherwise breached that agreement. Defendants have breached that agreement by failing to pay Plaintiffs as agreed.

42. As a proximate consequence and result of the breach, Plaintiffs were injured and damaged as alleged in paragraph 25 above which is specifically incorporated herein by reference as if fully set out herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

## COUNT IV
### (Estoppel)

15

43.    Plaintiffs  incorporate  herein  by  reference  the  foregoing paragraphs 1 through 42 as if fully set out herein.

44.    In reliance upon the promises and assurances made by the Defendant law firms, the Plaintiffs forewent the filing of any lawsuit, lien or contact with the Defendant law firms or any Fen-Phen client.

45.    The Defendant law firms have collected the settlement funds; these funds are due and owing to the Plaintiffs for work done on behalf of their clients.

46.    But for the screening, testing, administration and securement of "reads" by the Plaintiffs, the Plaintiffs would not have a client, would not be receiving funds for the client nor fees and reimbursement of expenses.

47.    After  receiving  assurances  from  the  Defendants  that  the Defendants would honor the March 2, 2005 agreement, the Plaintiffs relied upon such representations and understanding of the Defendants' intention to honor  said  agreement  and  postponed  bringing  this  action  in  reliance thereon.    Had  the  Defendants  not  made  such  assurances  and representations, Plaintiffs would have brought this action before settlement and distribution of funds by the Fen-Phen manufacturer.  Plaintiffs brought this action as soon as practical after it became apparent that the Defendants no longer intended to honor the Letter of Understanding, commitments and assurances made by them.  The Plaintiffs will suffer great injustice due to Defendants'  actions,  which  can  only  be  avoided  by  the  enforcement  of

16

Defendants' promise.    Therefore, the Defendant law firms should be estopped from failing to remit or otherwise pay said funds to the Plaintiffs and from remitting said funds to the Defendant Lindley.

48.    As a proximate consequence and result of the forbearance of legal action and other legal steps, the Plaintiffs were injured and damaged as alleged in paragraph 25, which is specifically incorporated herein by reference.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

## COUNT V
## (Work and Labor Done)

49.    Plaintiffs incorporate herein by reference the foregoing paragraphs 1 through 48 as if fully set out herein.

50.    The Defendant law firms owe Plaintiffs $1,025,000.00, together with interest thereon, for work and labor done for the Defendant law firms by the Plaintiff at their request on the days and dates set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

17

## COUNT VI
## (Money had and Received)

51.     Plaintiffs    incorporate    herein    by    reference    the    foregoing paragraphs 1 through 50 as if fully set out herein.

52.    The Defendant law firms owe Plaintiffs $1,025,000.00, together with interest thereon, received from the Fen-Phen manufacturer, or Fen-Phen Defendants on or about December, 2006.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

## COUNT VII
## (Account Stated)

53.     Plaintiffs    incorporate    herein    by    reference    the    foregoing paragraphs 1 through 52 as if fully set out herein.

54.    The Defendant law firms owe Plaintiffs $1,025,000.00, together with interest thereon, on an account stated between the Plaintiffs and the Defendants on or about March 2, 2005, and April 21, 2005.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

## COUNT VIII
## (Unjust Enrichment)

55.     Plaintiffs    incorporate    herein    by    reference    the    foregoing paragraphs 1 through 54 as if fully set out herein.

56.    The Defendant law firms owe Plaintiffs $1,025,000.00, together with interest thereon, for work and labor done for the Defendant law firms by the Plaintiffs at their request on the days and dates set forth herein.

57.    The Defendant law firms hold this money which, in equity and good conscience, belongs to the Plaintiffs as payment for the work and labor they performed on behalf of the Defendants.

58.    The Defendant law firms would be unjustly enriched at the expense of the Plaintiffs if they are allowed to keep possession of the $1,025,000.00 owed to the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants in such an amount as the jury in its discretion should award, together with interest and expenses thereon.

## COUNT IX
### (Promissory Fraud Against Defendant Todd P. Lindley Only)

59.    Plaintiffs incorporate herein by reference the foregoing paragraphs 1 through 58 as if fully set out herein.

60.    The Defendant Todd P. Lindley, in March 2002, promised to pay Plaintiffs a fee plus expenses for services performed in connection with the administration and testing of potential Fen-Phen clients.    The original promise was to pay $200.00 per test, whether such test was positive or negative, with an additional $1,000.00 paid for each client that tested positive and on which a settlement was received.

19

61.    On or about March 2, 2005, the Defendant Lindley promised to pay the Plaintiff $600,000.00, payable $10,000.00 on or before April 30, 2004, with the balance being paid at the rate of $1,500.00 per case or client referred to various referral law firms.

62.    Said promises were false and were made by the Defendant Lindley with no present intent to perform them.  However, the Plaintiffs relied upon the promises, incurred great expense in connection with the administration and testing of the Fen-Phen clients, restrained legal action and forbore from filing a lawsuit.  The fraud was not discovered until on or about January 3, 2007.

63.    As a proximate consequence and result of the fraudulent activities, statements, misrepresentations and promises made by the Defendant Lindley, the Plaintiffs were injured and damaged as alleged in paragraph 25 above, which is specifically incorporated herein by reference.

WHEREFORE, Plaintiffs demand judgment against Defendants of such compensatory and punitive damages as the jury in its discretion may award.

## COUNT X
### (Specific Performance)

64.    Paragraphs 1 through 63 are incorporated herein by reference.

65.    The aforementioned March 2, 2005 letter of understanding is a valid contract with sufficiently certain terms, which all law firm Defendants either agreed to, ratified, or acquiesced in.

66.    Plaintiffs have fulfilled all contractual conditions of the agreement by forbearing from filing suit against the Defendants on the claims underlying the March 2, 2005 letter of understanding.

67.    A remedy at law is inadequate because the Defendant Lindley law firm is an unincorporated association with insufficient funds to pay money damages.  Its owner is Defendant Lindley.  Upon information and belief, Defendant Lindley has already or is near filing for bankruptcy and has been indicted and pled guilty to felony charges in Texas, for which he must serve time in prison.  Furthermore, the March 2, 2005 letter of understanding contemplates a "Settlement Fund" which is in immediate danger of being completely and irreversibly depleted upon distribution of settlement funds to the Fen-Phen claimants.

68.    Enforcement of the March 2, 2005 letter of understanding is feasible because it directs that a specific amount be deducted from the settlement distributions of specific Fen-Phen claimants as those monies are paid into the Defendant law firms pursuant to any settlement agreements reached in the Fen-Phen litigation.

69.    Mutuality of remedy exists because both Defendants and Plaintiffs can be required to specifically perform their respective duties under the March 2, 2005 letter of understanding.  Specifically, the March 2, 2005 letter of understanding states that "[t]his letter summarizes our understanding of a way to settle an outstanding controversy arising out of

21

services performed by Bridgeway Diagnostics, LLC (sic) and Donna Hoover (Claimants)." Thus, Plaintiffs agreed to cease in its pursuit of its claims against Defendants in return for payment under the March 2, 2005 letter of understanding. Such forbearance by Plaintiffs can be specifically enforced by the Court.

70. Defendants have no defenses to the enforcement of specific performance of the March 2, 2005 letter of understanding.

WHEREFORE, Plaintiffs requests that this Court specifically enforce the March 2, 2005 letter of understanding in its entirety, and provide Plaintiffs with any other such relief as the Court deems proper.

**COUNT XI**
**(Temporary, Preliminary and Permanent Injunction)**

71. Paragraphs 1 through 70 are incorporated herein by reference.

72. Plaintiffs have demonstrated a substantial likelihood of success on the merits of this action.

73. Plaintiffs will suffer irreparable injury during the pendency of this lawsuit unless the injunction issues immediately.

74. Defendants are in possession of the Fen-Phen settlement proceeds. Defendants intend to immediately begin, or have already begun, distribution of the settlement proceeds to the Fen-Phen claimants without deducting the amounts required to be paid to Plaintiffs by agreement of March 2, 2005. By reason of Defendants' actions, Plaintiff has suffered and

will continue to suffer extreme hardship and actual impending irreparable damage due to the Defendants' breach of the settlement reached between the parties. Once the monies have been paid out to the Fen-Phen claimants or to Defendant Lindley, the money will or may be gone forever and Plaintiffs Bridgeway and Hoover will continue to suffer irreparable damages. In October 2006, a $31,000 balloon payment became due arising out of the repossessed CYPRESS ultrasound machines which Plaintiffs lease-purchased to facilitate the diagnostic services purchased by Defendants. Because of Defendants' failure to carry out their responsibilities under the March 2, 2005 agreement, Plaintiffs cannot pay the monies that have become due, and have suffered and continue to suffer irreparable harm.

75.    The threatened injury to Plaintiffs outweighs whatever damage the proposed injunction may cause the Defendants. Plaintiffs will not be able to recover money damages if Defendants are not enjoined and restrained from taking actions with regard to the money in issue.

76.    A remedy at law is inadequate because there is an immediate threat of total depletion of the Settlement Fund if Defendants Watts, Aylstock and Holt pay any Settlement Fund monies to Defendant Lindley. The Defendant Lindley law firm is an unincorporated association with insufficient funds to pay money damages. Its owner is Defendant Lindley. Upon information and belief, Defendant Lindley has already or is near filing for bankruptcy and has been indicted and pled guilty to felony charges in

Texas, for which he must serve time in prison.  Furthermore, the March 2, 2005 letter of understanding contemplates a "Settlement Fund" which is in immediate danger of being completely and irreversibly depleted upon distribution of settlement funds to the Fen-Phen claimants.  Thus, Plaintiffs have no adequate or speedy remedy at law, and this action for injunctive relief is the Plaintiffs' only means for securing relief.

77.    This injunction would not be adverse to the public interest because it is limited to the monies due and owing to Plaintiffs only, and will not adversely affect the payment to Fen-Phen claimants.

WHEREFORE, Plaintiffs request that this Court:

(a)    Issue a temporary restraining order and a preliminary injunction:

•    Ordering the Defendant Law Firms, their agents, employees, successors, and attorneys, and all those in active concert or participation with them, to refrain immediately, and pending the final hearing and determination of the present action, from paying any portion of settlement funds to Fen-Phen claimants that were tested by Plaintiff Bridgeway until payment to Bridgeway has first been deducted or effectuated;

•    Enjoining Defendants Holt, Wyatt and Alystock from paying to Defendant Lindley any portion of the settlement proceeds which are to be allocated to Bridgeway under the March 2, 2005 letter of understanding or other agreement; and

24

• Ordering Defendants to immediately pay into the Court, or into escrow, the total sum of funds due to Plaintiffs under the March 2, 2005 agreement, pending the final resolution of this action.

(b) Issue a permanent injunction perpetually enjoining and restraining the Defendant Law Firms, their agents, employees, successors, and attorneys, and all those in active concert or participation with them, to refrain from paying any portion of settlement funds which are to be allocated to Bridgeway under the March 2, 2005 letter of understanding or other agreements to Fen-Phen claimants, enjoining and restraining Defendants Holt, Watts and Alystock from paying any portion of the settlement proceeds which are allocated to Bridgeway under the March 2, 2005 letter of understanding or other agreement to Defendant Lindley, and ordering Defendants to pay Plaintiffs all sums due them under the contracts.

(c) Any such other relief as the Court may deem proper.

Respectfully submitted this the 26 day of January, 2007.

_____
**George L. Beck, Jr. (BEC011)**
**Richard H. Allen (ALL 052)**
**Arden Reed Pathak (PAT072)**
Attorneys for Plaintiffs

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street 36104
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile:  (334) 323-8888

25

**PLAINTIFFS RESPECTFULLY DEMAND TRIAL BY JURY**

_____

Richard H. Allen    (ALL052)
**George L. Beck, Jr. (BEC011)**

Attorney for Plaintiffs

## VERIFICATION OF COMPLAINT

STATE OF _Georgia_ )

COUNTY OF _Gwinnett_ )

I, Donna Hoover, a citizen of the United States and a resident of the State of Alabama, am a Plaintiff in this action and a member of Plaintiff Bridgeway Mobile Diagnostics, L.L.C. I have read the foregoing Verified Complaint and declare under penalty of perjury under the laws of the United States of America and the State of Alabama that the foregoing factual averments are true and correct to the best of my knowledge and belief.

_____

Donna Hoover, Individually,

and as Officer of Bridgeway

Mobile Diagnostics, L.L.C.,

Plaintiffs

I, the undersigned Notary Public for said state and county, hereby attest that Donna Hoover appeared before me, being identified and duly sworn, signed this verification swearing the allegations of the Verified Complaint on this the ____ day of January, 2007.

_____

Notary Public    Notary Public, Gwinnett County, GA
                 Commission Expires September

The Defendants shall be served by certified mail at:

**Todd Lindley**
LINDLEY & ASSOCIATES
5968 W. Northwest Highway, Suite 1806
Dallas, TX  75225

**Theodore J. Holt**
11335 Gold Express Drive, #105
Gold River, California  95670

**HACKARD & HOLT**
11335 Gold Express Drive, #105
Gold River, California  95670

**Phillip O. Watts**
101 N. Robinson, Suite 501
Oklahoma City, OK  73102

**WATTS & WATTS**
101 N. Robinson, Suite 501
Oklahoma City, OK  73102

**AYLSTOCK, WITKIN & SASSER, PLC**
Post Office Box 1147
Gulf Breeze, Florida  32562-1147

# Exhibit A



March 2, 2005

Donna Hoover and Bridgeway Diagnostics, LLC          *Via Facsimile*
c/o George L. Beck, Jr.
Capell & Howard, P.C.
Post Office Box 2069
Montgomery, Alabama 36102-2069

**PEZZULLI KINSER**

17304 PRESTON RD
SUITE 700
DALLAS, TX 75252
TEL. 972 713.3500
FAX 972.713.1333

     Re:    Donna Hoover; Bridgeway Diagnostics, LLC
            Your File No.: 25090-002

## LETTER OF UNDERSTANDING

Dear Mr. Beck:

    This letter summarizes our understanding of a way to settle an outstanding controversy arising out of services performed by Bridgeway Diagnostics, LLC and Donna Hoover (Claimants). The undersigns understand that such agreement is subject to the letters (letters) going out to the firms to which the client cases have been referred (referee law firms). The substance of the Agreement is as follows:

1.    Claimants entered into a service agreement with Lindley & Associates (Lindley) in connection with services rendered for testing potential clients for injury incurred as a result of the usage of Phen-Fen;

2.    Although the cases have not yet settled, Lindley will pay a portion of the expenses owed with the remaining expenses to be paid out of cases if and when such cases settle;

3.    The parties hereto agree that the maximum expenses owed are $600,000.00; however, said expenses shall be less if the fees recovered on said cases are insufficient to pay said expenses. The parties hereto agree to said compromise and agree to fully release each other for any and all claims other than the claims specified for the amounts set forth herein;

4.    Lindley agrees to pay Claimants, under the service agreement, as case expenses out of settlements, up to a maximum of Six Hundred Thousand Dollars ($600,000.00) for all services rendered (Settlement Fund).

5.    The undersigns agree that the Settlement Fund is a compromise, and that such compromise will result in a release of Claimants from any obligation to Dr. Mancina or any other third party.

6.    In satisfaction of a portion of the $600,000.00 expenses, Claimants will receive a payment of Ten Thousand Dollars ($10,000.00) on or before April 30, 2004, which will be credited against the Settlement Fund.

PEZZULLI KINSER, L.L.P

WWW.COURTROOM.COM   TOLL FREE 1 866 707 6667



**EXHIBIT**

_A_

Donna Hoover and _____ geway Diagnostics, LLC
Page 2 of 2
March 2, 2005

7.  Lindley shall furnish to the referee law firms a full and complete list of all cases tested by Claimants, which shall include the name of the client, city tested and status of case as inside (class) or outside the class action (opt-out). (Inventory). This list will be used to reference when to notify and pay Claimants regarding settlement of cases.

8.  As payment of the remaining amounts under this agreement, Lindley agrees to direct the referee law firms, by way of the letters, to pay directly to George L. Beck, Jr., as attorney for Claimants, One Thousand Dollars ($1500.00) per case from each class action claim, matrix, or individual case tested by Claimants, whether tried or settled by the referee law firms. Said payment from either source shall be paid or distributed simultaneously with distribution to the client.

9.  A copy of all distribution sheets from the matrix or individual cases shall be forwarded to Claimants' attorney along with the check for the Claimants' services.

10. The parties hereto agree that the contents and terms of this Letter of Understand, including the existence of said agreement, are to be kept strictly confidential and are not to be disclosed or discussed with anyone other than the undersigned parties.

11. There are 453 cases of Claimants that are positive and open, including both matrix and opt-out. Of these, 87 are class claims and the balance, 366, are opt-out cases with lawsuits filed. There are five firms handling these cases, including Lindley's firm. We will be forwarding the master list to the firms, with each positive case marked for their computer list.

12. Lindley offers to pay $5000 on or before March 15, 2005, and $5000 on or before April 30, 2005.

Very truly yours,

PEZZULLI KINSER, L.L.P.

Jack B. Krona, Jr.
For the Firm

AGREED AS TO FORM AND SUBSTANCE:

George L. Beck, Jr.

# Exhibit B

# LINDLEY & ASSOCIATES
5968 W. Northwest Hwy., Suite 1806
Dallas, Texas 75225
Telephone: (972) 661-2332 • Fax: (972) 661-0606

April, 21, 2005

Justin G. Witkin, Esq.
Alystock, Witkin & Sasser
Post Office Box 1147
Gulf Breeze, Florida 32562-1147

Re:  Bridgeway Mobile Diagnostics, LLC outstanding invoices with Lindley & Associates

Dear Justin:

As per our discussions regarding Bridgeway Diagnostics and Donna Hoover this is to notify you that we have reached an agreement regarding outstanding invoices. I have enclosed a master list of clients which Bridgeway originally performed the technician services.  I have designated the clients on the list which your firm has open and to which Bridgeway should receive payment.

Pursuant to our agreement with Bridgeway I would request that at the time these designated cases are settled you notify both our firm and George Beck, Jr. as attorney for Bridgeway and Donna Hoover that the cases are settled.   Upon the disbursement of settlement funds I would request that you pay the invoice for each client directly to Bridgeway  c/o George Beck, Jr.  at Capell & Howard, Post Office Box 2069, Montgomery, Alabama 36102-2069.

For each of the designated cases that receive a settlement, whether they are class action matrix or opt out cases, Bridgeway is to be paid $1500.   Finally, as part of the agreement we would also request that, to the extent permissible by the settlement,  a copy of all distribution sheets from these designated claims be included with payment to Mr. Beck.

I appreciate your assistance in resolving this matter with Bridgeway.  If you have any questions please do not hesitate to contact me.

Kindest regards,

Todd Lindley

TPL/kh
Enclosure

**EXHIBIT**
B

# Exhibit C

# LINDLEY & ASSOCIATES

5968 W. Northwest Hwy., Suite 1806
Dallas, Texas 75225
Telephone: (972) 661-2332 • Fax: (972) 661-0606

April, 21, 2005

Phil Watts, Esq.
Watts & Watts
101 N. Robinson,  Suite 501
Oklahoma City, OK 73102

     Re:  Bridgeway Mobile Diagnostics, LLC outstanding invoices with Lindley & Associates

Dear Phil:

As per our discussions regarding Bridgeway Diagnostics and Donna Hoover this is to notify you that we have reached an agreement regarding outstanding invoices.  I have enclosed a master list of clients which Bridgeway originally performed the technician services.   I have designated the clients on the list which your firm has open and to which Bridgeway should receive payment.

Pursuant to our agreement with Bridgeway I would request that at the time these designated cases are settled you notify both our firm and George Beck, Jr. as attorney for Bridgeway and Donna Hoover that the cases are settled.   Upon the disbursement of settlement funds I would request that you pay the invoice for each client directly to Bridgeway c/o George Beck, Jr.  at Capell & Howard, Post Office Box 2069, Montgomery, Alabama 36102-2069.

For each of the designated cases that receive a settlement, whether they are class action matrix or opt out cases, Bridgeway is to be paid $1500.   Finally, as part of the agreement we would also request that,  to the extent permissible by the settlement,  a copy of all distribution sheets from these designated claims be included with payment to Mr. Beck.

I appreciate your assistance in resolving this matter with Bridgeway.  If you have any questions please do not hesitate to contact me.

     Kindest regards,

     Todd Lindley

TPL/kh
Enclosure

EXHIBIT
C

# Exhibit D



# LINDLEY & ASSOCIATES

5968 W. Northwest Hwy., Suite 1806
Dallas, Texas 75225
Telephone: (972) 661-2332 • Fax: (972) 661-0606

April, 21, 2005

Ted Holt, Esq.
Hackard & Holt
11335 Gold Express Dr.
Gold River, CA 95670

      Re:  Bridgeway Mobile Diagnostics, LLC outstanding invoices with Lindley & Associates

Dear Ted:

As per our discussions regarding Bridgeway Diagnostics and Donna Hoover this is to notify you that we have reached an agreement regarding outstanding invoices.  I have enclosed a master list of clients which Bridgeway originally performed the technician services.   I have designated the clients on the list which your firm has open and to which Bridgeway should receive payment.

Pursuant to our agreement with Bridgeway I would request that at the time these designated cases are settled you notify both our firm and George Beck, Jr. as attorney for Bridgeway and Donna Hoover that the cases are settled.   Upon the disbursement of settlement funds I would request that you pay the invoice for each client directly to Bridgeway c/o George Beck, Jr.  at Capell & Howard, Post Office Box 2069, Montgomery, Alabama 36102-2069.

For each of the designated cases that receive a settlement, whether they are class action matrix or opt out cases, Bridgeway is to be paid $1500.   Finally, as part of the agreement we would also request that,  to the extent permissible by the settlement,  a copy of all distribution sheets from these designated claims be included with payment to Mr. Beck.

I appreciate your assistance in resolving this matter with Bridgeway.  If you have any questions please do not hesitate to contact me.

      Kindest regards,

      Todd Lindley

TPL/kh
Enclosure



**EXHIBIT**

D

# EXHIBIT

# E



Writer's Email:
jackk@courtroom.com

Writer's Direct Dial
(972) 713-1303

PEZZULLI
KINSER

17304 PRESTON RD
SUITE 700
DALLAS, TX 75252
TEL. 972 713.1300
FAX 972 713 1333

August 31, 2005

*Via Facsimile*

George Beck
Capell & Howard
150 South Perry Street
Montgomery, Alabama 36102-2069
334-241-8000
334-323-8888 Fax

Re:    Fen-Phen Cases

Dear Mr. Beck:

We have received your letter of August 22, 2005, regarding the Fen-Phen litigation. My client has informed me that he has been in contact with each of the firms and that they have received your July 20, 2005 letters, and that they will honor the terms of the letter. To date, Mr. Lindley has not received any referral fees for any of the Fen-Phen litigation that are the subject of the July 20, 2005 letters.

If you have any questions, please call me.

Very truly yours,

BY: _____
Jack B. Krona Jr.
For the Firm

JBK/lm

PEZZULLI KINSER, L.L.P
WWW.COURTROOM.COM    TOLL FREE 1 866.707 844



EXHIBIT
E

EXHIBIT

F



17304 PRESTON RD
SUITE 700
DALLAS, TX 75252
TEL. 972.713.1300
FAX 972.713.1333

Writers Email:
jackk@jcourtroom.com

Writers Direct Dial
(972) 713-1303

October 10, 2005

George Beck                                    *Via Facsimile*
Capell & Howard
150 South Perry Street
Montgomery, Alabama 36102-2069
334-241-8000
334-323-8888 Fax

     Re:    Fen-Phen Cases

Dear Mr. Beck:

     We are writing in response to your letter of September 30, 2005. Enclosed please find copies of the original letters that Mr. Lindley sent to the referring attorneys and the follow-up letters he recently sent.

     If you have any questions, please call me.

               Very truly yours,

     BY: _____
               Jack B. Krona Jr.
               For the Firm

JBK/lm
Enclosure

PEZZULLI KINSER, L.L.P
WWW.COURTROOM.COM

EXHIBIT

F

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME : 09/30/2005 07:48
                              NAME : LINDLEY
                              FAX  : 9726610606
                              TEL  : 9726612332
```

```
    DATE,TIME           09/30  07:47
    FAX NO./NAME        18509344115
    DURATION            00:01:21
    PAGE(S)             05
    RESULT              OK
    MODE                STANDARD
                        ECM
```

# LINDLEY & ASSOCIATES
### 5968 W. Northwest Hwy., Suite 1806
### Dallas, Texas 75225
### Office: 972-661-2332
### Fax: 972-661-0606

# FAX COVER SHEET

**To:** _Jessica_

**Fax#:** _850-934-4115_

**From:** _Todd Lindley_

**Date:** _10-6-05_

**Re:** _Letter to George Beck, Esq._

**Total Fax Pages (Inc. coversheet):** _5_

**Comments:** _Amy Quinton call my cell at 214-801-1044_

# LINDLEY & ASSOCIATES

5968 W Northwest Hwy., Suite 1806
Dallas, Texas 75225
Telephone: (972) 661-2332 • Fax (972) 661-0606

April, 21, 2005

Justin G. Witkin, Esq.
Alystock, Witkin & Sasser
Post Office Box 1147
Gulf Breeze, Florida 32562-1147

　　　Re: Bridgeway Mobile Diagnostics, LLC outstanding invoices with Lindley &
　　　Associates

Dear Justin:

As per our discussions regarding Bridgeway Diagnostics and Donna Hoover this is to
notify you that we have reached an agreement regarding outstanding invoices. I have
enclosed a master list of clients which Bridgeway originally performed the technician
services. I have designated the clients on the list which your firm has open and to which
Bridgeway should receive payment.

Pursuant to our agreement with Bridgeway I would request that at the time these
designated cases are settled you notify both our firm and George Beck, Jr. as attorney for
Bridgeway and Donna Hoover that the cases are settled. Upon the disbursement of
settlement funds I would request that you pay the invoice for each client directly to
Bridgeway c/o George Beck, Jr. at Capell & Howard, Post Office Box 2069,
Montgomery, Alabama 36102-2069.

For each of the designated cases that receive a settlement, whether they are class action
matrix or opt out cases, Bridgeway is to be paid $1500. Finally, as part of the agreement
we would also request that, to the extent permissible by the settlement, a copy of all
distribution sheets from these designated claims be included with payment to Mr. Beck.

I appreciate your assistance in resolving this matter with Bridgeway. If you have any
questions please do not hesitate to contact me.

　　　　　　　Kindest regards,

　　　　　　　Todd Lindley

TPL/kh
Enclosure

10-10-05, 09:28pm    From-PEZZULLI KINER LLP                                    T-737  P.06/24  F-560



```
                    ┌─────────────────────────────────────┐
                    │  TRANSMISSION VERIFICATION REPORT    │
                    └─────────────────────────────────────┘

                                        TIME : 04/27/2005 08:57
                                        NAME : LINDLEY
                                        FAX  : 9726610606
                                        TEL  : 9726612332

  ┌──────────────────────────────────────────────────────────────────┐
  │   DATE,TIME             04/27  08:56                               │
  │   FAX NO./NAME          18509344115                                │
  │   DURATION              00:01:21                                   │
  │   PAGE(S)               05                                         │
  │   RESULT                OK                                         │
  │   MODE                  STANDARD                                   │
  │                         ECM                                        │
  └──────────────────────────────────────────────────────────────────┘
```

# LINDLEY & ASSOCIATES
### 5968 W. Northwest Hwy., Suite 1806
### Dallas, Texas 75225
### Office: 972-661-2332
### Fax: 972-661-0606

# FAX COVER SHEET

**To:** _Justin Witkin_

**Fax#:** _850-934-4115_

**From:** _Todd Lindley_

**Date:** _5-2-05_

**Re:** _Bridgeway Diagnostics_

**Total Fax Pages (Inc. coversheet):** _5_

**Comments:** _____

# LINDLEY & ASSOCIATES
## 5968 W. Northwest Hwy., Suite 1806
## Dallas, Texas 75225
## Office: 972-661-2332
## Fax: 972-661-0606

# FAX COVER SHEET

**To:** Justin Witkin

**Fax#:** 850-934-4115

**From:** Todd Lindley

**Date:** 5-2-05

**Re:** Bridgeway Diagnostics

**Total Fax Pages (Inc. coversheet):** 5

**Comments:**

THE INFORMATION CONTAINED IN THIS FACSIMILE IS PRIVILEGED AND CONFIDENTIAL ATTORNEY INFORMATION INTENDED ONLY FOR THE USE OF THE ADRESSEE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOUR ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLEY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND PLEASE RETURN THE ORIGINAL TO US AT THE ABOVE ADDRESS VIA U.S POSTAL SERVICE THANK YOU

EXHIBIT

G

# LINDLEY & ASSOCIATES

5968 W. Northwest Hwy., Suite 1806
Dallas, Texas 75225
Telephone: (972) 661-2332 • Fax: (972) 661-0606

January 3, 2007

Justin G. Witkin, Esq.
Alystock, Witkin & Sasser
Post Office Box 1147
Gulf Breeze, Florida 32562-1147

Re:  Bridgeway Mobile Diagnostics, LLC

Dear Justin:

Pursuant to our conversation this will confirm my instruction that you hold off on any direct payments to Bridgeway or George Beck.  We are currently negotiating making payment of a lump sum amount to Bridgeway.  As I indicated to you, we met in Birmingham last month and have proposed a settlement to Mr. Beck and his client.  I am currently awaiting a written response to that proposal.

While we may or may not have an agreement with Bridgeway I am not aware of any agreement they have with you.  As an accommodation to me, I had asked you to pay Bridgeway directly; however, as you know circumstances have changed.  The dispute is between Bridgeway and my firm and I do not believe your involvement is necessary or relevant at this time.   Accordingly, please do not allow Bridgeway to interfere with our or our clients' contractual relationship with your firm.

I am optimistic that we will be able to reach resolution on this matter.  Until that time, I believe that it would be best if only our firm communicates with Mr. Beck to reach an accord with his client.   If we need specific information from your firm I will contact you.

Thank you and I apologize that you have been burdened by our dispute.  Please do not hesitate to contact me with questions.

Kindest regards,

Todd P. Lindley

cc: George Beck, Esq.



RECEIVED
JAN - 8 2007
CAPELL & HOWARD, P.C.

EXHIBIT
G

FRANK H. McFADDEN
JOHN F. ANDREWS
WILLIAM D. COLEMAN
WILLIAM K. MARTIN
GEORGE L. BECK, JR.
BRUCE J. DOWNEY III
HENRY C. BARNETT, JR.
K. PALMER SMITH
ROBERT T. MEADOWS III
HENRY H. HUTCHINSON
SHAPARD D. ASHLEY
D. KYLE JOHNSON
ROBERT F. NORTHCUTT

CELESTE P. HOLPP
JAMES N. WALTER, JR.
JAMES H. McLEMORE
CONSTANCE SMITH BARKER
W. HOLT SPEIR III
CHRISTOPHER W. WELLER
DEBRA DEAMES SPAIN
C. CLAY TORBERT III
R. BROOKE LAWSON III
J. SCOTT PIERCE
ROBERT D. RIVES
RICHARD H. ALLEN
M. COURTNEY WILLIAMS

GEORGE RUSSELL, JR.
CHAD W. BRYAN
MICHAEL P. DALTON
CATY HOUSTON RICHARDSON
ARDEN REED PATHAK
TODD H. COX
TERRIE SCOTT BIGGS

OF COUNSEL:
JAMES M. SCOTT
THOMAS S. LAWSON, JR.

# CAPELL & HOWARD P.C.
### ATTORNEYS AT LAW

January 9, 2007

Justin G. Witkin, Esq.
Alystock, Witkin & Sasser
Post Office Box 1147
Gulf Breeze, Florida 32562-1147

      Re:    Bridgeway Mobile Diagnostics, LLC  - Todd Lindley's Letter of 1/3/07
             Our File No.:  25090-002

Dear Mr. Witkin:

      Contrary to Mr. Lindley's letter, no circumstances have changed.  He especially agreed with Ms. Hoover for you to withhold $1,500 per client and make those payments to me as Bridgeway's attorney.

      You previously agreed with me that you would honor Mr. Lindley's settlement agreement with Ms. Hoover of Bridgeway.  We have sent numerous letters confirming that understanding. Your firm is definitely involved, and your participation is relevant. Bridgeway is not interfering with any of Mr. Lindley's contractual relationships with your firm.  Instead, however, we are merely trying to enforce that agreement.  Both Mr. Lindley and I have forwarded to you previous copies of that Agreement.

      Based upon information I have seen, your firm has withheld these funds pursuant to the agreement reached between Lindley and Bridgeway.  I am shocked that Mr. Lindley has asked you to withhold payment "as an accommodation" to him.  That is a material breach of the second contract reached between Bridgeway and Todd.  Apparently, Mr. Lindley had no present intent to fulfill that agreement.  However, you do not need to be unnecessarily drawn into that battle. Accordingly, I call on you and your firm once more to honor the agreement reached between

**MONTGOMERY • OPELIKA / AUBURN**

1083229.doc  150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102-2069
      334 241 8000 *tel*    334 323 8888 *fax*    www.capellhoward.com

Page Two
January 9, 2007

Lindley and Bridgeway, honor the commitment made by you to me to honor that agreement and remit funds to our law firm on behalf of Ms. Hoover, and to otherwise comply with the agreement reached between our three law firms. I expect an immediate response.

Sincerely,

CAPELL & HOWARD, P.C.

George L. Beck, Jr.

GLB,JR:cmj

cc:     Jack Krona, Esq.
        Todd P. Lindley, Esq.
        Ms. Donna Hoover, Bridgeway Mobile Diagnostics

1083229.doc

# EXHIBIT
# H

## George L. Beck, Jr.

**From:**    Justin Witkin [JWitkin@AWS-LAW.com]
**Sent:**    Thursday, January 26, 2006 10:02 AM
**To:**      George L. Beck, Jr.
**Cc:**      lindleyT@flash.net; ToddLindley@charter.net
**Subject:** Lindley clients 1-26-06 (2).xls

George,

It was nice to speak with you yesterday.  As we discussed, I am including a list of fen-phen cases originated by Todd Lindley that I have a reasonable expectation may settle in the next 60 days.

Please feel free to contact me if you have any additional questions.


Justin G. Witkin
Aylstock, Witkin & Sasser P.L.C.
4400 Bayou Blvd., Ste. 58
Pensacola, FL 32503
Ph:  850-916-7450
Fax:  850-916-7449
WWW.AWS-LAW.com



EXHIBIT

H

# EXHIBIT
# I

## Fen-Phen Settlement Statement

### Laura Lehman-Gillissie

File ID: 13641    Client ID: 13560

November 20, 2006

| | | |
|---|---:|---:|
| Gross Settlement Amount: | | $20,000.00 |
| | | |
| Gross Attorney Fee (45%) | | ($9,000.00) |
| Multi-District Litigation Court Assessment | $0.00 | |
| Settlement Counsel Fee (Law Offices of Bobby Moak): | $2,250.00 | |
| Net Attorney Fee | $8,750.00 | |
| | | |
| Settlement Less Fees:    (Gross Settlement Amount - Gross Attorney Fee) | | $11,000.00 |

### Case Costs

| | | |
|---|---:|---:|
| Lindley & Associates - Other Costs | $382.30 | |
| Closing Costs | $50.00 | |
| Common Shared Costs | $250.00 | |
| Copying/Printing/Reproduction Costs | $1.97 | |
| Echo Costs | $250.00 | |
| Filing Fee-Deposition Fee/Court Costs | $346.33 | |
| Interest | $246.85 | |
| Medical Costs (Doctor/Testing/Records) | $165.00 | |
| Office Supplies | $0.98 | |
| Postage/FedEx/Delivery Costs | $41.47 | |
| Process Service | $141.64 | |
| Telephone/Fax Costs | $1.52 | |
| Lindley & Associates - Echo Costs | $1,500.00 | |
| Total Costs (Waived except for echo costs): | $3,378.06 | ($1,750.00) |
| | | |
| Net Proceeds to Client:    (Settlement Less Fees - Total Costs) | | $9,250.00 |

Alystock - Wicker firm

Page 1 of 3

**EXHIBIT**

F