IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIDGEWAY MOBILE DIAGNOSTICS, LLC, an Alabama Limited Liability Company, and DONNA HOOVER,<br><br>       Plaintiffs<br><br>V.<br><br>TODD P. LINDLEY, d/b/a LINDLEY & ASSOCIATES; THEODORE J. HOLT; HACKARD & HOLT, A Partnership, PHILIP O. WATTS; WATTS & WATTS, a Partnership; ALYSTOCK, WITKIN & SASSER, PLC,<br><br>       Defendants | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:07-cv-76-WKW (WO)<br><br>**[CASE UNDER SEAL]** |

**DEFENDANT THEODORE J. HOLT'S REPLY TO PLAINTIFFS' OPPOSITION TO
NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE
12(B)(2) AND 12(B)(3) AND IN THE ALTERNATIVE MOTION TO TRANSFER VENUE
AND BRIEF IN SUPPORT THEREOF**

TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   A BRIEF HISTORY OF KEY ASPECTS OF THE CASE...........................................2

III.  THE MISSING MINIMUM CONTACTS .................................................................3

      A.   Plaintiffs Admit H&H Never Signed Any Contract
           With Plaintiff…………………………………………..………………….…..3

      B.   As a Matter of Alabama Law the Written Contract
           Precludes Any Implied Contract…..…………………….…………………..4

      C.   H&H Did Not Ratify Any Contract, and Plaintiffs Do Not
           Even Attempt to Show Evidence of Ratification Sufficient
           to Satisfy the Alabama Requirement…………..………..…………………..5

      D.   The 2005 Letter of Understanding is Not A Contract
           With Defendants Theodore J. Holt or Hackard & Holt…..………………..7

      E.   The H&H Settlement Agreement With Lindley Created
           No Contacts with Alabama…………………………..……..………………..8

      F.   Lindley's Activities in Alabama Do Not Create Jurisdiction
           Over Theodore J. Holt or Hackard & Holt…………..……………………..9

      G.   Plaintiffs' Communication With H&H Do Not Give Rise
           to Jurisdiction...…………………………………………..…………………..9

IV.   JURISDICTION OVER H&H WOULD OFFEND TRADITIONAL
      NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE………………………...10

V.    CONCLUSION ...............................................................................................12

## TABLE OF AUTHORITIES

Cases

*Austin v. Cox*, 523 So. 2d 376 (Ala. 1988) ................................................................................5, 6

*Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297 (Ala. 1986) ..................................................6

*Mosley by & Through Salter v. Jefferson County Bd. of Educ.*, 677 So. 2d 776

   (Ala. Civ. App. 1995) ...................................................................................................................4

*The Mitchell Company, Inc. v. Campus*, 2008 U.S. Dist. LEXIS 3450 (S.D. Ala. 2008)...............4

*Vardaman v. Florence City Board of Education*, 544 So. 2d 962 (Ala. 1989) ................................4


Statutes

28 U.S.C. § 1404(a)..........................................................................................................................1

Fed. R. Civ. Proc. 12(B)(2) .............................................................................................................1

Fed. R. Civ. Proc. 12(B)(3) .............................................................................................................1

Defendant Theodore J. Holt[1] files this Reply to the Opposition of Plaintiffs Bridgeway Mobile Diagnostics, LLC and Donna Hoover ("Plaintiffs") to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. Proc. Rule 12(B)(2) and Fed. R. Civ. Proc. 12(B)(3) and in the Alternative Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Plaintiffs' 45 page opposition absolutely proves jurisdiction over . . . Todd Lindley. Plaintiffs show that it was Lindley, and only Lindley, who signed a contract with Plaintiffs. Plaintiffs show that it was Lindley, and only Lindley, who traveled to Alabama to enter into this contract.

In contrast, neither Theodore J. Holt nor Hackard & Holt signed any contract with Plaintiffs. Recognizing this difficulty, Plaintiffs claim the H&H somehow "ratified and confirmed" the Lindley-Bridgeway contract. But under Alabama law, to succeed on a ratification claim requires that Plaintiffs allege *and prove* that Todd Lindley was the agent of Theodore J. Holt and Hackard & Holt. Plaintiffs do neither. Further, to this very day, neither Theodore J. Holt nor anyone at Hackard & Holt has even seen the alleged contract between Lindley and Bridgeway, and so Theodore J. Holt and H&H are unaware of its terms. Holt Affidavit. As a matter of law and logic a party cannot "ratify" a contract without knowing the terms of that contract.

Bridgeway next claims an implied contract exists between H&H and Bridgeway. This argument falls flat. Under Alabama law no such contract can exist when an express contract about the same subject matter exists.

---

[1] The arguments that Defendant Theodore J. Holt makes here apply to defendant Hackard & Holt. Each defendant should be dismissed as explained more fully herein. For convenience, unless otherwise indicated "H&H" is used to denote Theodore J. Holt and Hackard & Holt.

Bridgeway's last claim is that a series of communications, and other miscellaneous events, somehow establish both contract ratification and jurisdiction. They do not. Bridgeway claims only one communication was initiated by H&H: a single phone call. Thus Bridgeway's entire 45 page opposition boils down to one phone call. This is not enough.

Discussed below are the lack of an express, implied, or ratified contract; the insufficiency of the claimed contacts as a jurisdictional basis; and the substantial offense to fair play and due process that would occur if H&H, which Bridgeway calls a "nationwide" law firm but which in reality has one small office in Northern California, were forced to defend a suit in Alabama despite the lack of both contract and contacts.

Although there is no jurisdiction here over Theodore J. Holt and Hackard & Holt, Plaintiffs are hardly left without recourse. Plaintiffs are free to pursue Todd Lindley, the party that they admit made the contracts in Alabama and over whom jurisdiction appears certain.

## II.    A BRIEF HISTORY OF KEY ASPECTS OF THIS CASE

This case is actually between Todd Lindley and Bridgeway. Lindley contracted with Bridgeway. Lindley agreed to pay Bridgeway. Lindley apparently did not do so. Lindley has now been convicted of a felony, disbarred, and sentenced to federal prison. On May 14, 2007 the Texas Supreme Court permanently enjoined and prohibited Lindley from receiving any fees, directly or indirectly. The Texas Supreme Court also required Lindley to do a number of other things, such as notify clients and Courts of his situation. It appears that he has done none of these.

Lindley's predicament prompted Bridgeway to seek to collect on Lindley's bill from other quarters. To that end Bridgeway has attempted to assert liens against Lindley's recovery from various law firms, to which Lindley referred cases. In other words, Bridgeway has sought

to recover from these firms, including Hackard & Holt, not the funds of those firms, but funds of Lindley. Plaintiffs' Opp., Ex. B. These liens only purportedly seek Lindley's proceeds, to which he may or may not be entitled.

Hackard & Holt has attempted to work with Bridgeway's counsel in good faith. For unknown reasons this has proved difficult, and twice without warning Bridgeway has filed motions for default, at times that Hackard & Holt thought negotiations were proceeding. In light of this a responsive pleading was obviously necessary, and given the clear-cut lack of jurisdiction the present motion was filed. Hackard & Holt recognizes that Bridgeway has a different view on the reasons for the failure of the informal negotiations to proceed, but that topic is presently irrelevant.

Equally irrelevant are the ad hominem attacks in Bridgeway's brief, in which Bridgeway claims that H&H has been playing some form of delaying game while trying to collect on cases and not pay Bridgeway. Leaving aside the lack of a direct obligation from H&H to Bridgeway, H&H will not respond in kind to these attacks, beyond noting that they are false, offensive, and demeaning to both the parties and the Court.

Below we address the lack of minimum contacts and the offense to due process that would arise from the creation of jurisdiction in this case.

## III.    THE MISSING MINIMUM CONTACTS

### A.  Plaintiffs Admit H&H Never Signed Any Contract With Plaintiffs

Before proceeding H&H points out the confusingly casual use terminology in Bridgeway's brief. Although "Defendants" is defined as "Ted Holt and Hackard & Holt" in footnote 1 on page 2, Bridgeway sometimes uses the term "Defendants" more broadly, in an apparent effort to lump H&H in with the actions of Defendant Lindley, who is the truly liable

party in this matter.  For example, Plaintiffs claim that an attorney for Lindley – who most assuredly does not represent Hackard & Holt – "notified the Plaintiffs *that the Defendants agreed* to honor the terms of the Letter of Understanding."  Plaintiffs' Opp. at 10 (Emphasis added).  Here, the term "defendants" does not and cannot mean Theodore J. Holt or Hackard & Holt; it can only mean Lindley.  This usage occurs in several places throughout Bridgeway's brief.

Moving along, Plaintiffs concede that H&H did not sign any contract with Bridgeway. This applies to both the so-called "original contract" of 2002, and to the "Letter of Understanding" of 2005.  Plaintiffs' Opp. at 5, 9, 21.  These were contracts signed by Plaintiffs and Lindley.  H&H signed neither.  Recognizing this, Bridgeway is forced into making the following contorted arguments: that an implied contract existed, or alternatively that Holt ratified the existing contracts.  Both of these arguments fail.

**B.     As A Matter of Alabama Law the Written Contract Precludes Any Implied Contract**

Recognizing the difficulties posed by the lack of a contract with Holt, Plaintiffs now claim that an "implied contract" existed.  Plaintiffs' Opp. at 22.

This claimed implied contract finds itself quickly drawn and quartered by Alabama law. In Alabama it is well established that "the existence of an express contract generally excludes an implied agreement relative to the same subject matter." *Vardaman v. Florence City Board of Education*, 544 So. 2d 962, 965 (Ala. 1989); *Mosley by & Through Salter v. Jefferson County Bd. of Educ.*, 677 So. 2d 776, 777 (Ala. Civ. App. 1995); *The Mitchell Company, Inc. v. Campus*, 2008 U.S. Dist. LEXIS 3450 (S.D. Ala. 2008)("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter.").

Defendant Todd Lindley *expressly* contracted with Plaintiff Bridgeway to perform echocardiogram and screening services for potential Fen-Phen claimants in many locations, including Alabama, and in return for those services apparently agreed to make payments.

Now Plaintiffs claim that an implied contract covered the exact same subject matter. Under the law there can be no implied contract for Bridgeway's performance of these exact same services.

Interestingly and tellingly, Plaintiff Bridgeway made no mention of an "implied contract" in its Complaint. The implied contract theory is a recent concoction, brewed up in response to Plaintiffs' realization that there is no jurisdiction here.

### C.    H&H Did Not Ratify Any Contract, and Plaintiffs Do Not Even Attempt to Show Evidence of Ratification Sufficient to Satisfy the Alabama Requirement

Plaintiffs make a cursory claim that Holt "ratified" the contract between Plaintiffs and Lindley. Plaintiffs' Opp. at 21. At first it is surprising that nowhere in 45 pages of briefing do Plaintiffs 1) explain the legal standard for contract ratification and 2) show how the present facts fit this standard.

This failure becomes understandable upon viewing the law of contract ratification. It is not even arguably applicable here.

Ratification will not be found unless there is an agency relationship and the principal manifests intent to ratify the agent's unauthorized act. That intent will not be found without evidence to show that the principal had adequate knowledge of the facts and circumstances in the case, and despite that knowledge, conducted himself in a way that evinced his intent to confirm or adopt the unauthorized act of the agent. *Austin v. Cox*, 523 So. 2d 376, 378 (Ala. 1988).

Where the agent is not an actual agent, the level of proof required to establish ratification becomes more stringent. *Id.*

Here, no agency relationship existed between Defendant Lindley and Theodore J. Holt or Hackard & Holt and thus ratification fails at the threshold. Critically, Plaintiffs fail to make even the most bare allegation of agency, let alone provide any evidence of agency. The burden is on Plaintiffs, as they admit. Plaintiffs' Opp. at 14. By ignoring it they fail to carry it.

Second, and equally critically, Theodore J. Holt had no knowledge of the terms of the alleged agreement between Plaintiff Bridgeway and Defendant Lindley and in fact has never seen said agreement. Holt Affidavit. Without full knowledge of "all the facts and circumstances," assention or confirmation is impossible. Agreement is impossible. As a matter of both law and logic one cannot be bound by a contract when one does not know the terms. Plaintiffs here have shown, at most, that H&H, from its offices in California, was involved in assisting Plaintiffs in their performance of their own contract. Plaintiffs have not even attempted to show that H&H knew all contract terms, or was ever shown or offered the contract now claimed to be "ratified." Plaintiffs have not shown a shred of evidence that Theodore J. Holt or Hackard & Holt were involved in payments to be made by Lindley to Plaintiffs. Plaintiffs have submitted no invoices directed to H&H because there never were any such invoices. Once again, Plaintiffs do not even attempt to carry their burden on this.

The lone case cited by Plaintiffs is of no help to them. *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297 (Ala. 1986) involved a corporate employee who sold a mobile home with a contract that required a company officer to sign. The salesman was not an officer. The question was whether this company then ratified the contract, with which it was inarguably familiar, having drafted it. Here, in contrast, Lindley has never been the agent of Theodore J.

Holt or Hackard and Holt, and neither Theodore J. Holt nor Hackard & Holt have ever seen the contract at issue. Bridgeway likewise has no basis in law or in fact to make the allegation that Lindley was H&H's agent and does not so allege. While Lindley's own personal travails may have forced Bridgeway to look to others to satisfy its account with Lindley, the fact that Lindley referred cases to H&H does not make Lindley H&H's agent. In fact, H&H never authorized Lindley to act as H&H's agent for any reason at any time. Holt Affidavit.

Plaintiffs' claims that "accepting the benefit of echocardiogram services" and being in "regular contact" with Plaintiffs somehow establish contract ratification are without support in the law. Plaintiffs and Lindley on the one hand, and Lindley and Hackard & Holt on the other, were in separate deals. H&H merely helped Plaintiffs with delivering echocardiograms. This does not come close to satisfying the Alabama test for ratification.

### D.    THE 2005 LETTER OF UNDERSTANDING IS NOT A CONTRACT WITH DEFENDANT THEODORE J. HOLT OR HACKARD & HOLT

In a last gasp effort to establish some type of relationship with H&H, Plaintiff Bridgeway presents yet another document drafted and executed by Defendant Lindley. Plaintiffs' Opp. at 9. Plaintiffs readily admit this "2005 Letter of Understanding" flowed from "the terms of the original contract" (*Id.*) – a contract which H&H had no part in. In fact, this 2005 letter that Lindley sent to several law firms to which he referred cases was nothing more than a request by Defendant Lindley to help him repay fees he allegedly owed to his creditor, Bridgeway. This letter was about Lindley's obligation. It did not create a new obligation in anyone else. The letter is a mere purported assignment of money to which Lindley may or may not be entitled. Plaintiffs have provided absolutely no contrary evidence, and cannot because there is none.

Critically, neither Theodore J. Holt nor Hackard & Holt ever contacted Plaintiff

Bridgeway in Alabama or elsewhere regarding the terms of Lindley's 2005 letter with Plaintiff.

In fact, Plaintiff acknowledges that it was Jack B. Krona, Jr., attorney for Defendant Lindley,

that represented to the Plaintiffs that "the Defendants agreed to honor the terms of the Letter of

Understanding." Plaintiffs' Opp. at 10.   Here Plaintiffs use the terms "Defendants" in an

overbroad way, which while technically accurate is both confusing and contrary to Plaintiffs'

own definition and which attempts to conflate Lindley with Theodore J. Holt and Hackard &

Holt.

Lindley's attorney does not represent Theodore J. Holt or Hackard & Holt, and has never

done so.  Lindley's attorney can make no representations for H&H, nor can he bind H&H.

### E.    The H&H Settlement Agreement With Lindley Created No Contacts With Alabama

Plaintiffs also claim that a May 4, 2007 transcript from the U.S. District Court for the

Northern District of Dallas somehow confers jurisdiction in Alabama, by making Bridgeway "an

intended third part beneficiary." Plaintiffs' Opp. at 23.  The May 4, 2007 transcript does no such

thing.  As shown in Plaintiffs' own Exhibit C, that transcript merely recites that "in cases where

Bridgeway performed the echocardiogram, they will be paid per the agreement with Bridgeway

or subsequent modification of the agreement with Bridgeway." This is a mere recitation of an

existing obligation – namely, Lindley's obligation.

Plaintiffs also claim that Holt has breached obligations imposed by the May 4, 2007

transcript.  This is both false and unsupported.

///

**F.     Lindley's Activities in Alabama Do Not Create Jurisdiction
        Over Theodore J. Holt or Hackard & Holt**

Plaintiffs again conflate Lindley's and H&H's separate identities in an attempt to suggest

that H&H has had minimum contacts with this jurisdiction. This is incorrect. Lindley has

minimum contact with Alabama, H&H does not.

Lindley hired Bridgeway to test potential clients in Alabama. As Bridgeway alleges,

Lindley directed Bridgeway to perform the testing of specific individuals in Alabama that

Lindley found through advertising that Lindley placed. Bridgeway makes no colorable

allegation that H&H had any hand in this because it cannot. It was Lindley who arranged for and

in fact performed this client screening with Bridgeway and Lindley alone. This Court cannot

assert personal jurisdiction over H&H for contacts that Lindley had with this jurisdiction.

**G.     Plaintiffs' Communications With H&H Do Not Give Rise to Jurisdiction**

Plaintiffs claim to have had numerous communications with H&H personnel. These

were apparently aimed at helping Plaintiffs perform certain of their contractual obligations such

as obtaining and sending echocardiograms.

Significantly, Plaintiffs describe all of these communications in the vaguest of terms,

except for one. Plaintiffs claim that one phone call was placed to Plaintiffs by Ted Holt.

Although Mr. Holt denies ever having spoken with Ms. Hoover, even if Plaintiffs' statement is

true this shows the remarkable shallowness of Plaintiffs' position. Plaintiffs do not allege any

other calls were made by H&H, and so effectively concede that this case hangs on *one phone

call.* Plaintiffs' Opp. at 28-29.

Clearly, then, this phone call must have been momentous. Plaintiffs must be alleging that

Mr. Holt powerfully reached into Alabama and effected something significant there. Ms. Hoover

herself recounts the claimed call in her affidavit. She states: "Mr. Holt's call came at a time when I was considering stopping performance under the contract." Hoover Aff., Para. 7. Ms. Hoover then says that Mr. Holt convinced her not to breach her contract with Lindley, as she was considering. Ms. Hoover does not say that she had decided to stop performance; she does not say that but for Mr. Holt's phone call she would have stopped.

Even if everything Ms. Hoover says is true – and Theodore J. Holt denies that – by her own account he did not create a new contract. He did verify or execute a contract. He did not offer her anything. By her own account he merely pointed out that the best course was not to breach her contract.

This is not the sort of lone phone call that can support a finding of jurisdiction. Legally, this call amounts to nothing. Ms. Hoover does not even decisively say that she changed her position in reliance on this lone phone call.

## IV. JURISDICTION OVER H&H WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

H&H had no contractual arrangements with Bridgeway. It directed no activities into Alabama; Bridgeway itself alleges only a single phone call, and further alleges that in the course of that call Bridgeway was merely encouraged to honor existing contractual obligations.

Bridgeway describes H&H as a "nationwide law firm." Plaintiffs' Opp. at 33. In doing so Bridgeway seeks to cast H&H in the same light as giant corporations. Yet, H&H is a small law firm. H&H has one office, in northern California, and a half-dozen attorneys. On these facts it would be grossly unfair to subject Theodore Holt or H&H to jurisdiction in Alabama.

Bridgeway's claim that H&H has waived the jurisdictional issue is simply far-fetched. See Plaintiffs' Opp. at 33. Plaintiffs claim that because of the passage of time and because H&H participated in "informal discovery," H&H waived the right to challenge personal jurisdiction.

The opposite is true. H&H attempted repeatedly to resolve things informally with Bridgeway, and held off on filing the present motion in the hope that this would be possible. Instead, Bridgeway forced the issue by filing a second motion for default judgment.

In any event, Bridgeway undercuts its own argument. Bridgeway argues both that H&H participated in informal discovery, and did not participate. See Plaintiffs' Opp. at 35 and 12. In reality, no discovery has occurred, and no substantive litigation has yet occurred. There can be no waiver.

In sum, Bridgeway does not make a showing, because it cannot, of any systematic or continuing contacts with Alabama. Accordingly Bridgeway cannot show that it is foreseeable that H&H would be haled into court here. Yet this is the keystone of due process analysis.

Merely receiving a phone call does not make it foreseeable that one will be sued in the caller's state. The same is true of returning a phone call. Bridgeway makes much of a conference call with the Court in January of 2007. Bridgeway omits key facts. For example, that call came in to the offices of H&H with the announcement that "a federal judge was on the line." Such calls are typically taken, as they should be. But this is a far cry from consenting to jurisdiction. In fact, it was only during that call that H&H learned that a lawsuit was the issue, since at the time of the call Peter Holt, who handled the call, had not yet received the papers, if they had even been delivered to H&H at all. The call ended with the parties agreeing to try to work things out informally.

///

## V.    CONCLUSION

This case must be dismissed as to Theodore J. Holt and Hackard & Holt because there is no jurisdiction. There is no express contract. There is no implied contract. There is no ratified contract. The contacts do not support jurisdiction; at most, and as Plaintiffs admit, H&H was helping Plaintiffs to perform which was in H&H's interest because of H&H's own deals. There are no minimum contacts here, and further, extending jurisdiction here would be unfair.

The Plaintiffs are pursuing the wrong party and they know it. As shown by their own Exhibit B, attached to their opposition, they are not seeking H&H's funds, but are seeking a lien on Lindley's funds. This concedes that not even Bridgeway believes it has a contract with H&H. Bridgeway has never in the past acted as if it had such a contract.

Plaintiffs should re-direct their efforts against Lindley, the party they admit signed their contract. Theodore J. Holt and Hackard & Holt have no place in this litigation.


Dated:  February 1, 2008                              Respectfully submitted,


                                                    *Theodore J. Holt*
                                                    _____
                                                    Theodore J. Holt
                                                    California State Bar No. 148899
                                                    Hackard & Holt
                                                    11335 Gold Express Drive, Suite 105
                                                    Gold River, California 95670
                                                    Telephone:    (916) 853-3000
                                                    Facsimile:    (916) 853-3010

                                              **DEFENDANT IN PRO SE**


**DEFENDANT THEODORE J. HOLT'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**                              PAGE 12

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served via first class U.S. Mail upon all parties and/or their counsel of record as follows:

**George L. Beck Jr.**
**Richard H. Allen**
**Arden Reed Pathak**
**CAPELL & HOWARD P.C.**
**P.O. Box 2069**
**150 South Perry Street 36104**
**Montgomery, AL  36102-2069**

**Todd Lindley**
**8409 Pickwick Lane, Suite 385**
**Dallas, TX  75225**

**Phillip O. Watts, Esq.**
**Watts & Watts**
**210 Park Avenue, Suite 1110**
**Oklahoma City, OK  73102**

this 1st day of February 2008.

_____
Theodore J. Holt