IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 FEB 20  P 1: 27

| | | |
|---|---|---|
| BRIDGEWAY MOBILE DIAGNOSTICS, LLC, an Alabama Limited Liability Company, and DONNA HOOVER, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | CASE NO. 2:07-cv-76-WKW |
| TODD P. LINDLEY d/b/a LINDLEY & ASSOCIATES; THEODORE J. HOLT; HACKARD & HOLT, a Partnership; PHIL WATTS ; WATTS & WATTS, a Partnership ; AYLSTOCK, WITKIN & SASSER, a Florida Professional Limited Liability Company, | * * * * * * * * | **CASE UNDER SEAL** |
| Defendants. | * * | |

**MOTION FOR LEAVE TO FILE SUPPLEMENT TO PLAINTIFFS'
BRIEF IN OPPOSITION TO DEFENDANT THEODORE J. HOLT'S
NOTICE OF MOTION AND MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(b)(2) AND 12(b)(3)
AND IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Come now Plaintiffs Bridgeway Mobile Diagnostics, LLC and

Donna Hoover (collectively, "Plaintiffs") and hereby submit this Motion

for Leave to File Supplement to Plaintiffs' Brief in Opposition to

Defendant Theodore J. Holt's Notice of Motion and Motion to Dismiss

Pursuant to F.R.C.P. 12(b)(2) and 12(b)(3) and in the Alternative

Motion to Transfer Venue (Doc. 43).  As grounds for this motion, Plaintiffs state as follows:

1.    On December 7, 2007, Defendants Theodore J. Holt and Hackard & Holt (the "Holt Defendants") filed a Notice of Motion and Motion to Dismiss pursuant to F.R.C.P. 12(b)(2) and 12(b)(3) and in the alternative, Motion to Transfer Venue ("Defendants' Motion"). (Doc. 36) On December 12, 2007, this Court ordered Plaintiffs to file a response brief on or before December 26, 2007 and ordered the Holt Defendants to file a reply brief on or before January 9, 2008. (Doc. 38) On December 21, 2007, this Court amended its previous briefing schedule by extending the deadline for Plaintiffs to file a response in opposition to the Defendants' Motion until January 18, 2008, and the deadline for the Holt Defendants to file a reply brief until February 1, 2008.  (Doc. 42)  This extension was requested by Plaintiffs due to the unavailability of the transcript for the January 26, 2007 TRO hearing held in this matter. (Doc. 41)  Both parties filed their respective briefs and Defendants' Motion was submitted to the Court on the briefs on February 1, 2008.

2.    At the time the Plaintiffs filed their brief in opposition to Defendants' Motion (Doc. 43), the transcript for the TRO hearing was still unavailable.  Rather than request another extension, Plaintiffs filed their brief in opposition, but reserved the right to supplement their

2

brief once the transcript of the January 26, 2007 TRO teleconference hearing was made available.  (Doc. 43, pp.11-13, n.8)

3.    On February 15, 2008, the Court reporter provided Plaintiffs with the transcript of said hearing.

4.    Attached hereto as Exhibit A is Plaintiffs' proposed Supplement to Plaintiffs' Brief in Opposition to Defendant Theodore J. Holt's Notice of Motion and Motion to Dismiss Pursuant to F.R.C.P. Rule P12(b)(12) and 12(b)(3) and in the alternative, Motion to Transfer Venue.  As set forth in Plaintiffs' proposed Supplement, the hearing transcript supports this Court's exercise of jurisdiction over the Holt Defendants.    First Peter Holt appeared on behalf of the Holt Defendants and opposed the Plaintiffs' request for a TRO without objecting to the Court's jurisdiction.  This supports Plaintiffs' argument that the Holt Defendants waived their lack of personal jurisdiction defense.    Second Mr. Holt acknowledged his belief that the Holt Defendants represented up to a dozen Alabama citizens in the Fen-Phen litigation.  This acknowledgement supports the Court's exercise of specific jurisdiction over the Holt Defendants.

WHEREFORE, based upon the foregoing, Plaintiffs respectfully request this Court enter an order granting Plaintiffs leave to file the proposed Supplement to Plaintiffs' Brief in Opposition to Defendant Theodore J. Holt's Notice of Motion and Motion to Dismiss Pursuant to

F.R.C.P. Rule 12(b)(12) and 12(b)(3) and in the alternative, Motion to Transfer Venue, a true and correct copy of which is attached hereto as Exhibit A.

Respectfully submitted, this the ____ day of February, 2008.

_____
**George L. Beck, Jr. (BEC011)**
**Richard H. Allen (ALL052)**
**Arden Reed Pathak (PAT072)**
Attorneys for Plaintiffs

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street 36104
Montgomery, AL  36102-2069
Telephone: (334) 241-8000
Facsimile:  (334) 323-8888

## CERTIFICATE OF SERVICE

A copy of the foregoing has been delivered to the Defendants, at the addresses set forth below, on this the ___ 20 ___ day of February, 2008.

Todd Lindley, Esq.
8409 Pickwick Lane, Suite 385
Dallas, TX  75225

Theodore J. Holt, Esq.
11335 Gold Express Drive, #105
Gold River, California  95670

HACKARD & HOLT
c/o Peter Holt, Esq.
11335 Gold Express Drive, #105
Ancho Cordova, California  95670

_____
Of Counsel

## EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIDGEWAY MOBILE DIAGNOSTICS, LLC, an Alabama Limited Liability Company, and DONNA HOOVER, | * * * * * | |
| Plaintiffs, | * * * | |
| v. | * * | CASE NO. 2:07-cv-76-WKW |
| TODD P. LINDLEY d/b/a LINDLEY & ASSOCIATES; THEODORE J. HOLT; HACKARD & HOLT, a Partnership; PHIL WATTS ; WATTS & WATTS, a Partnership ; AYLSTOCK, WITKIN & SASSER, a Florida Professional Limited Liability Company, | * * * * * * * * * | **CASE UNDER SEAL** |
| Defendants. | * | |

**SUPPLEMENT TO PLAINTIFFS'**
**BRIEF IN OPPOSITION TO DEFENDANT THEODORE J. HOLT'S**
**NOTICE OF MOTION AND MOTION TO DISMISS**
**PURSUANT TO F.R.C.P. 12(b)(2) AND 12(b)(3)**
**AND IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Come now Plaintiffs Bridgeway Mobile Diagnostics, LLC and Donna Hoover (collectively, "Plaintiffs") and hereby submit this Supplement to Plaintiffs' Brief in Opposition to Defendant Theodore J. Holt's Notice of Motion and Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and 12(b)(3) and in the Alternative, Motion to Transfer Venue. As grounds for this motion, Plaintiffs state as follows:

1.    On January 26, 2007, this Court held a teleconference hearing on Plaintiffs' Motion for a Temporary Restraining Order against Theodore J. Holt and Hackard & Holt (the "Holt Defendants") and the other defendants.  Attached hereto as Exhibit A is the transcript of the January 2006 hearing.  Peter Holt appeared by telephone on behalf of the Holt Defendants, but did not object to the Court's assertion of personal jurisdiction over the Holt Defendants.[1]  (Exh. A, pp. 12-13) Mr. Holt's appearance and opposition to Plaintiffs' request for a TRO, without objection to the Court's assertion of jurisdiction over the Holt Defendants, further strengthens Plaintiffs' argument that the Holt Defendants waived the defense of lack of personal jurisdiction.  (Doc. 43, pp. 33-35)

2.    Furthermore, when Peter Holt was questioned by the Court regarding Alabama citizens represented by Hackard & Holt in Fen-Phen litigation, Mr. Holt estimated that Hackard & Holt represented around 12 Alabama residents in such litigation.[2]  (Ex. A, p. 9)    This

---

[1]    The basis of Mr. Holt's opposition to the TRO was his claim that there was no immediate danger of misallocation of funds from the settlement of Fen-Phen cases because the settlement agreement which had recently been reached with Wyeth would not be funded for 90 to 120 days from the date of the hearing, *i.e.*, funding would occur May 2007.  (Id.)  Plaintiffs note that as of the filing of this Supplement, they have not received any proceeds from these settlements, or any other information from the Holt Defendants on these settlements.

[2]    Plaintiffs contend that Hackard & Holt represented more than a dozen Alabama citizens.  However, because Hackard & Holt has refused to give Plaintiffs the client list it has promised for over a year, and the parties have not conducted any formal discovery, Plaintiffs cannot at this time say exactly how many Alabama residents Hackard & Holt represented.

acknowledgement by Mr. Holt further strengthens the Court's exercise of specific personal jurisdiction over the Holt Defendants. (Doc. 43, pp. 18-29)

WHEREFORE, for the additional reasons contained herein, Plaintiffs respectfully request this Court deny Defendant Theodore J. Holt's Notice of Motion and Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and 12(b)(3) and in the Alternative, Motion to Transfer Venue in its entirety.

Respectfully submitted, this the _____ day of February, 2008.

_____

**George L. Beck, Jr. (BEC011)**
**Richard H. Allen (ALL052)**
**Arden Reed Pathak (PAT072)**
Attorneys for Plaintiffs

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street 36104
Montgomery, AL  36102-2069
Telephone: (334) 241-8000
Facsimile:  (334) 323-8888

## **CERTIFICATE OF SERVICE**

A copy of the foregoing has been delivered to the Defendants, at

the addresses set forth below, on this the ___ day of February, 2008.

Todd Lindley, Esq.
8409 Pickwick Lane, Suite 385
Dallas, TX  75225

Theodore J. Holt, Esq.
11335 Gold Express Drive, #105
Gold River, California  95670

HACKARD & HOLT
c/o Peter Holt, Esq.
11335 Gold Express Drive, #105
Ancho Cordova, California  95670

_____
Of Counsel

## EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIDGEWAY MOBILE DIAGNOSTICS, LLC, an Alabama Limited Liability Company, and DONNA HOOVER, | * * * * * | |
| Plaintiffs, | * * * | |
| v. | * * | CASE NO. 2:07-cv-76-WKW |
| TODD P. LINDLEY d/b/a LINDLEY & ASSOCIATES; THEODORE J. HOLT; HACKARD & HOLT, a Partnership; PHIL WATTS ; WATTS & WATTS, a Partnership ; AYLSTOCK, WITKIN & SASSER, a Florida Professional Limited Liability Company, | * * * * * * * * * | **CASE UNDER SEAL** |
| Defendants. | * | |

## SUPPLEMENT TO PLAINTIFFS'
## BRIEF IN OPPOSITION TO DEFENDANT THEODORE J. HOLT'S
## NOTICE OF MOTION AND MOTION TO DISMISS
## PURSUANT TO F.R.C.P. 12(b)(2) AND 12(b)(3)
## AND IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Come now Plaintiffs Bridgeway Mobile Diagnostics, LLC and

Donna Hoover (collectively, "Plaintiffs") and hereby submit this

Supplement to Plaintiffs' Brief in Opposition to Defendant Theodore J.

Holt's Notice of Motion and Motion to Dismiss Pursuant to F.R.C.P.

12(b)(2) and 12(b)(3) and in the Alternative, Motion to Transfer

Venue. As grounds for this motion, Plaintiffs state as follows:

1.     On January 26, 2007, this Court held a teleconference hearing on Plaintiffs' Motion for a Temporary Restraining Order against Theodore J. Holt and Hackard & Holt (the "Holt Defendants") and the other defendants.  Attached hereto as Exhibit A is the transcript of the January 2006 hearing.  Peter Holt appeared by telephone on behalf of the Holt Defendants, but did not object to the Court's assertion of personal jurisdiction over the Holt Defendants.[1]  (Exh. A, pp. 12-13) Mr. Holt's appearance and opposition to Plaintiffs' request for a TRO, without objection to the Court's assertion of jurisdiction over the Holt Defendants, further strengthens Plaintiffs' argument that the Holt Defendants waived the defense of lack of personal jurisdiction.  (Doc. 43, pp. 33-35)

2.     Furthermore, when Peter Holt was questioned by the Court regarding Alabama citizens represented by Hackard & Holt in Fen-Phen litigation, Mr. Holt estimated that Hackard & Holt represented around 12 Alabama residents in such litigation.[2]  (Ex. A, p. 9)     This

---

[1]     The basis of Mr. Holt's opposition to the TRO was his claim that there was no immediate danger of misallocation of funds from the settlement of Fen-Phen cases because the settlement agreement which had recently been reached with Wyeth would not be funded for 90 to 120 days from the date of the hearing, *i.e.*, funding would occur May 2007.  (Id.)  Plaintiffs note that as of the filing of this Supplement, they have not received any proceeds from these settlements, or any other information from the Holt Defendants on these settlements.

[2]     Plaintiffs contend that Hackard & Holt represented more than a dozen Alabama citizens.  However, because Hackard & Holt has refused to give Plaintiffs the client list it has promised for over a year, and the parties have not conducted any formal discovery, Plaintiffs cannot at this time say exactly how many Alabama residents Hackard & Holt represented.

2

acknowledgement by Mr. Holt further strengthens the Court's exercise of specific personal jurisdiction over the Holt Defendants. (Doc. 43, pp. 18-29)

WHEREFORE, for the additional reasons contained herein, Plaintiffs respectfully request this Court deny Defendant Theodore J. Holt's Notice of Motion and Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and 12(b)(3) and in the Alternative, Motion to Transfer Venue in its entirety.

Respectfully submitted, this the _____ day of February, 2008.

_____
**George L. Beck, Jr. (BEC011)**
**Richard H. Allen (ALL052)**
**Arden Reed Pathak (PAT072)**
Attorneys for Plaintiffs

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
Post Office Box 2069
150 South Perry Street 36104
Montgomery, AL  36102-2069
Telephone: (334) 241-8000
Facsimile:   (334) 323-8888

3

## CERTIFICATE OF SERVICE

A copy of the foregoing has been delivered to the Defendants, at

the addresses set forth below, on this the ___ day of February, 2008.

Todd Lindley, Esq.
8409 Pickwick Lane, Suite 385
Dallas, TX  75225

Theodore J. Holt, Esq.
11335 Gold Express Drive, #105
Gold River, California  95670

HACKARD & HOLT
c/o Peter Holt, Esq.
11335 Gold Express Drive, #105
Ancho Cordova, California  95670

_____

Of Counsel

```
 1               IN THE UNITED STATES DISTRICT COURT

 2              FOR THE MIDDLE DISTRICT OF ALABAMA

 3                       NORTHERN DIVISION

 4

 5   BRIDGEWAY MOBILE DIAGNOSTICS, LLC,
     and DONNA HOOVER,
 6
             Plaintiffs,
 7
         vs.                       CASE NO.:  2:07cv76-WKW
 8
     TODD P. LINDLEY, et al.,
 9
             Defendants.
10
                     * * * * * * * * * *
11
                   TELEPHONE STATUS CONFERENCE
12
                     * * * * * * * * * *
13
             BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES
14
     DISTRICT JUDGE, at Montgomery, Alabama, on Friday, January 26,
15
     2007, commencing at 3:01 p.m.
16
     APPEARANCES (via telephone):
17
     FOR THE PLAINTIFFS:     Mr. Richard H. Allen
18                           Mr. George L. Beck, Jr.
                             Attorneys at Law
19                           CAPELL & HOWARD
                             150 South Perry Street
20                           Montgomery, Alabama  36104

21   FOR THE DEFENDANTS:     Mr. Theodore J. Holt
                             Attorney at Law
22                           HACKARD & HOLT
                             11335 Gold Express Drive, Suite 105
23                           Gold River, California  95670

24

25
```

2

```
 1   APPEARANCES, Continued:

 2   FOR THE DEFENDANTS:        Mr. Philip O. Watts
                                Attorney at Law
 3                              WATTS & WATTS
                                210 Park Avenue, Suite 1110
 4                              Oklahoma City, Oklahoma  73102

 5                              Mr. Justin Witkin
                                Attorney at Law
 6                              AYLSTOCK, WITKIN & SASSER
                                4400 Bayou Boulevard, Suite 58
 7                              Pensacola, Florida  32503

 8            Proceedings reported stenographically;
                 transcript produced by computer.
 9
                     * * * * * * * * * *
10

11      (The following proceedings were heard before the Honorable

12      W. Keith Watkins, United States District Judge, at

13      Montgomery, Alabama, on Friday, January 26, 2007,

14      commencing at 3:01 p.m.:)

15            THE COURT:  This is Judge Watkins.

16            MR. ALLEN:  Hi, Judge.  Richard Allen here.  I have

17   conferenced in -- actually, George Beck is now available.  He's

18   on the line with us as is Peter Holt, Phil Watts, and Justin

19   Witkin, the defendants.  Todd Lindley we've been unable to get

20   ahold of.

21            THE COURT:  How about his attorney?  I bet you probably

22   didn't think to try his attorney.

23            MR. ALLEN:  You know, not until you just said that.

24   No, we didn't.  We've copied him with the material, but I did

25   not -- I can get my secretary, though, to try right now.
```

 1              THE COURT:  Would you do that, please?  And I'll hold

 2    until you can tell her that, and then come back on the line.

 3              MR. ALLEN:  Okay.

 4         (Brief pause)

 5              THE COURT:  Mr. Allen, are you back?

 6         (Brief pause)

 7              THE COURT:  Mr. Beck, are you on the line?

 8              MR. BECK:  I'm on the line, Judge.

 9              THE COURT:  Mr. Allen is not back?

10              MR. BECK:  Apparently not.  I think he's trying to get

11    Jack Krona, the attorney for Mr. Lindley.

12              MR. ALLEN:  And I'm back now.  I tried his direct line

13    and got his voice mail.  I have one of our associates trying to

14    track him down right now.

15              THE COURT:  Okay.  I have my court reporter here.  If

16    you-all -- I would like to take appearances, and we'll start

17    with the plaintiffs.  And if you would, give the name of your

18    firm and the location of your firm for the record, please.

19              MR. ALLEN:  I'll go ahead for plaintiffs.  This is

20    Richard H. Allen.  Also present for the plaintiffs is George L.

21    Beck, Jr.  We are both with Capell Howard here in Montgomery.

22              MR. WATTS:  Your Honor, Phil Watts.  I gather that I'm

23    a defendant in a fresh lawsuit down there.  I'm an attorney in

24    Oklahoma City.  I obviously make this appearance, Your Honor, on

25    a special basis, because I don't really know precisely what's

1  going on.  But it's Phil Watts with the firm of Watts & Watts in

2  Oklahoma City.

3           THE COURT:  Have you seen these pleadings, Mr. Watts?

4           MR. WATTS:  I have not, Your Honor.

5           THE COURT:  All right.  Thank you.  Mr. Holt?

6           MR. HOLT:  This is Peter Holt with Hackard & Holt in

7  Gold River, California.  I was joined with Mr. Watts at the

8  time.  I did receive the pleadings about eight minutes ago.  So

9  I haven't made my way all the way through, but I'm trying to get

10 a sense of what's going on here.

11          THE COURT:  All right.  Mr. Witkin?

12          MR. WITKIN:  Yes.  Justin Witkin, Aylstock, Witkin &

13 Sasser, Pensacola, Florida.  I've had the pleadings for a half

14 hour, I guess.

15          THE COURT:  All right.  And Mr. Witkin, you are

16 licensed in Alabama?

17          MR. WITKIN:  My partner, Bryan Aylstock, is licensed in

18 Alabama.  I'm not, although I did clerk for your cojudges up

19 there in the Middle District.

20          THE COURT:  Who was that?

21          MR. WITKIN:  I clerked for Judge DeMent and Judge

22 Hobbs, and then I clerked for Judge Carnes for a year.

23          THE COURT:  All right.  Anyone else on the call?

24    (No response)

25          THE COURT:  All right.  Let me ask a couple of

1  questions, and then I'm going to ask the plaintiffs to state the

2  relief they're seeking.  And then I'll take you in the order of

3  Mr. Watts, Mr. Holt, and Mr. Witkin in response, please.  Does

4  anyone have any information about the current status of

5  Mr. Lindley and his law practice?

6          MR. WATTS:  Your Honor, this is Phil Watts.  I have

7  somewhat lost contact with Mr. Lindley, and I'm sad to report

8  I'm not sure what's going on.  I really do not know.

9          MR. BECK:  Judge, this is --

10          MR. WATTS:  I mean I regret the response.

11          MR. BECK:  It's my understanding he's closing or has

12  closed his law practice.  He's pled guilty to a felony and will

13  probably either surrender or have to lose his license.  Now,

14  that was my understanding within the last 30 days.

15          THE COURT:  Is the felony, to your information, related

16  to these cases?

17          MR. BECK:  I do not know.  I do not know.

18          THE COURT:  Do either of the other two attorneys have

19  any information about Mr. Lindley?

20          MR. HOLT:  Your Honor, this is Peter Holt.  We may know

21  a little bit more than that.  We've seen some of the papers

22  related to Mr. Lindley's guilty plea.  And in those papers he

23  suggests -- and I understand the guilty plea arose out of -- I

24  believe it's mail fraud, and I think there was a nursing home

25  involved and funds that were invested in the nursing home ended

1    up not going where the investors intended.  And there's a

2    suggestion in some of the papers that some of those funds may

3    have gone into I think what he calls personal injury litigation,

4    which may or may not have been the very dietary litigation

5    that's involved here.  So I can't say that there is a direct

6    link, but there's at least a suggestion that that's a

7    possibility.

8            MR. WITKIN:  Justin Witkin, Your Honor.  I can't add

9    anything more than what's been discussed.

10           THE COURT:  All right.  I saw a reference in one of the

11   exhibits to referral fees to Mr. Lindley.  Do either of the

12   three firms have -- owe Mr. Lindley referral fees, if you -- if

13   that's not privileged information?

14           MR. WATTS:  Your Honor, Phil Watts.  I do not owe

15   Mr. Lindley anything.

16           MR. HOLT:  Your Honor, Peter Holt.  We are involved in

17   our own litigation with Mr. Lindley's firm over that very

18   question.  So I guess one could say there's an argument either

19   way.

20           THE COURT:  All right.

21           MR. WITKIN:  Justin Witkin, Your Honor.  We had an

22   agreement with Mr. Lindley to pay him referral fees on certain

23   cases he referred to us, certain fen-phen cases, which are the

24   cases at issue in this litigation.

25           THE COURT:  And Mr. Witkin, do you have an estimate as

1   to how many cases that would be?

2        MR. WITKIN:  I do, Your Honor.  Give me a moment and

3   I'll tell you.

4        MR. WATTS:  This is Phil Watts again.  While Mr. Witkin

5   is checking, just for the record, I had cases that were referred

6   by Mr. Lindley.  They have all been resolved, and the fees have

7   been paid per the agreements.

8        THE COURT:  Okay.

9        MR. WATTS:  But I think your question was do I owe him

10  anything, and I do not.

11       THE COURT:  All right.  Yes.

12       MR. WITKIN:  Your Honor, to the best of my information

13  that I have in front of me, we had approximately 500 --

14  approximately 500 cases that Mr. Lindley, for lack of a better

15  term, originated, that he involved us in on some level.  That

16  number would be broader than the cases at issue, and Mr. Beck

17  and Mr. Allen can speak to this as well, but broader than the

18  number of cases that involved the testing performed by the

19  plaintiffs.

20       THE COURT:  Would the testing performed by the

21  plaintiffs on persons in Alabama usually be on Alabama residents

22  who are clients of one of your three firms?

23       MR. WITKIN:  Again, Justin Witkin.  I'm not -- I

24  believe the answer is that it was not limited to Alabama

25  residents.

1        THE COURT: But some -- but certainly some of your

2   clients who were tested in Alabama were Alabama residents.  Is

3   that -- is that a fair statement?

4        MR. WITKIN: Your Honor, to be honest, I cannot answer

5   that one way or the other.  It's entirely possible, but I don't

6   have address information in front of me.  And my -- my basic

7   knowledge of Mr. Lindley's clients is that they were

8   geographically fairly well dispersed.  And I can't really speak

9   as to whether -- it's entirely possible.  I guess that would be

10  my answer.  But I can't affirmatively -- I can't conclude that

11  that is the case.

12       THE COURT: Mr. Watts, do you have any information on

13  that point?

14       MR. WATTS: Yeah, Your Honor.  I thought your question

15  went to all three firms.  Your Honor, I don't believe -- and

16  bear in mind I had very few of these cases, so I'm thinking

17  maybe 15 or so from Mr. Lindley's firm.  But it's my

18  understanding -- and I don't have it in front of me -- but it's

19  my understanding all of my clients were Oklahoma residents.  And

20  that's the reason they were referred to me.

21       THE COURT: Okay.

22       MR. WATTS: I think the reason for that, Your Honor, is

23  I think Mr. Lindley, as best I can tell, did quite a lot of

24  advertising for these fen-phen cases back in the day.  And some

25  of his -- some of his advertising geographical territories, if

1    you will, some of -- some of that was in southern Oklahoma.  So

2    that -- my guess is that's the genesis of the cases that were

3    referred to me, but I believe all of mine were Oklahoma

4    residents.

5            THE COURT:  Okay.

6            MR. WATTS:  And how they would have ended up being

7    tested by Bridgeway -- and correct me if I'm getting the name

8    wrong here -- Bridgeway, I really don't know the answer to that.

9            THE COURT:  All right.  Mr. Holt, were any of your

10   clients Alabama residents, to your knowledge?

11           MR. HOLT:  I believe we might have, I would say, a

12   dozen, possibly.  And I'd have to check whether any of those

13   were -- were in concert with Mr. Lindley.  Most of our clients

14   are not from Alabama.

15           THE COURT:  All right.  As to your connections with the

16   plaintiffs in this case, would the three firms, Watts, Holt, and

17   Witkin firms, would each of your connections with the Bridgeway

18   plaintiff be only through Mr. Lindley, or would you have an

19   independent -- and I'm -- I guess let's just -- let's talk about

20   your initial arrangement with these plaintiffs.  Would it have

21   come through Mr. Lindley, or did any of you have independent

22   transactions or contracts with these plaintiffs?

23           MR. WATTS:  Phil Watts, Your Honor.  Mine were all

24   through Mr. Lindley.

25           MR. HOLT:  Peter Holt, Your Honor.  Our answer is the

1    same.   Everything we did was through Mr. Lindley.

2         MR. WITKIN:  And Justin Witkin, Your Honor.  No, we

3    have no independent contract or agreement with Bridgeway.

4         THE COURT:  All right.  I think that answers my

5    preliminary questions.  I would ask the plaintiff to state the

6    relief and specifically, under Rule 65, why the potential for

7    harm is immediate and irreparable.

8         MR. BECK:  Judge, this is Mr. Beck.  We are simply

9    asking a status quo injunction on all those who still have funds

10   that they have not remitted to Mr. Lindley.  We're asking that

11   they either be paid into the Court or my trust fund or kept in

12   their trust fund until a final resolution.  As far as Mr. Watts,

13   I'm going to set that aside separately.  But that's all we're

14   asking for those who have not settled up with Mr. Lindley and

15   not otherwise remitted funds.

16        As to that last question Your Honor had, even though I

17   agree that they may not have gone personally with Bridgeway and

18   contracted, I think the sworn complaint in evidence clearly

19   shows that they intermingled with Bridgeway on testing and

20   retesting.  But -- what was the second question, Your Honor?

21   Oh, why is it irreparably caused.

22        THE COURT:  Yes.

23        MR. BECK:  If Lindley is shutting down his law practice

24   and going off to prison, which I understand is imminent, then

25   the money -- once the money gets to Texas and out of the

 1   jurisdiction of these lawyers and us, we'll never see a cent of
 2   it.  And we're saying they're holding those funds for us.  In
 3   other words, we're saying they're our funds because of the
 4   agreement reached back in March of 2005 that they agreed to,
 5   they acquiesced in, and told me personally that they would
 6   honor.  And otherwise, we would have sued them back then and had
 7   declaratory judgment and done that.  And we just learned in the
 8   last 30 days that money has been paid out and just learned today
 9   for the first time Mr. Watts has already settled up.  I was
10   hoping that everybody still held their funds.
11            MR. WATTS:  Mr. Beck, can I --
12            MR. BECK:  Go ahead.
13            MR. WATTS:  Well, I just want to say for the record, I
14   have --
15            THE COURT:  Is this Watts?
16            MR. WATTS:  Yeah.  This is Phil Watts.  You and I did
17   talk, Mr. Beck, and I have -- what I told you is I would have to
18   have confirmation from both client and -- authority from both
19   client and confirmation from Mr. Lindley that the monies were in
20   fact owing to Bridgeway.  On all of those where I did in fact
21   confirm that, I've held the money; and I'll be happy to turn it
22   over.  And maybe you and I can talk privately, but that's
23   certainly been done.
24            MR. BECK:  Okay.  Well, I --
25            MR. WATTS:  Not only because I --

1          MR. BECK:  I wrote several letters and never got a

2    response; and that's why we had to resort to this, because I've

3    got to protect my clients.  If that's fine, you know, I'm sure

4    we can work that out.  If that's true, if that's the only client

5    referrals you've got that involved those tested, then that's all

6    we're asking for.

7          MR. WATTS:  Well, that's -- okay.  I'm sorry, Your

8    Honor.

9          THE COURT:  No problem.  Mr. Holt, what's your position

10   on this?

11         MR. HOLT:  Well, from my cursory and brief review of

12   the papers, it looks like the claim is that we're -- we have a

13   bunch of money from Wyeth for dietary settlements and we owe it

14   to Bridgeway and they want us to put that aside for them.  And

15   conceptually, that might not be problematic.  I don't think a

16   TRO is the relief here.  The reality is we signed ourselves an

17   agreement with Wyeth this week.  It's going to take -- and I

18   think the other folks on the call can testify to this or assert

19   to this.  It's going to take us 90 to 120 days to start getting

20   money out of Wyeth.  We haven't even got together something like

21   5600 releases and a lot of other paperwork.  So there's nothing

22   imminent about to happen here with our cases at all.  We haven't

23   received a payment from Wyeth for well over I'd say 45 days, if

24   not longer.  I'm sure of that.  So I don't think there's any

25   grounds for a TRO as to us right now, because nothing has

1  happened just now or is about to happen.

2      THE COURT:  All right.  Mr. Witkin, what's your

3  situation?

4      MR. WITKIN:  We have received money from Wyeth on a

5  number of clients.  I have not paid Mr. Lindley his fees, and I

6  told Mr. Beck that, you know, we would honor an agreement that

7  Mr. Lindley made to the extent that it is consistent with the

8  agreement that the clients agreed to.  I mean we have a duty,

9  obviously, to the clients as well.  I have no objection in

10 concept to setting aside that money which, in theory, could be

11 owed to Bridgeway.  I'm not -- and I've not familiarized myself

12 with the pleadings.  I'm not sure what relief is being sought.

13 If it's simply limited to the money that could be owed to

14 Bridgeway per the client agreement with Mr. Lindley and

15 Mr. Lindley's agreement in turn with Bridgeway, I don't have an

16 objection to that.  If it's broader than that, if you're asking

17 to tie up funds beyond that, then I think there's no basis in

18 fact or in law for that.

19     THE COURT:  Okay.  I hear where this is headed.  What

20 I'm going to propose is that I get off the call and you-all talk

21 this out.

22     Mr. Beck, can you stay on the call and try to work this

23 out?

24     MR. BECK:  I can.  I think we're very close, Your

25 Honor.

```
 1            THE COURT:  It sounds like it.  And I'll just be
 2  sitting here by the phone.  And why don't you-all call me back
 3  and see if we can't come up with some kind of consent or some
 4  kind of representation to the Court or just an agreement among
 5  yourselves as officers of the Court that it's been worked out.
 6  And I'll just wait to hear back from you.  Does that suit
 7  everybody?
 8            MR. WATTS:  That's certainly -- that's acceptable from
 9  my perspective, Your Honor.  Phil Watts.  That's fine.
10            MR. BECK:  Would it be acceptable if we reached some
11  consensus that Mr. Allen can simply call back and inform the
12  Court?  Would that suit everybody or do you want --
13            MR. WATTS:  That's fine by -- is that George?
14            MR. BECK:  Yes.
15            MR. WATTS:  George?  Yeah.  George, that's fine by me.
16  Phil Watts.
17            THE COURT:  Okay.  Now, that leaves open Mr. Lindley's
18  situation.  So I think, Mr. Witkin, one of the things that
19  you're going to have to -- I don't know that -- I don't know
20  that anyone's asking that his referral fees be interfered with.
21  I probably would have a problem with that, but I'd hear about
22  it.  Whatever clients he has are entitled to their funds, so I
23  don't know how we want to deal with that.  You-all deal among
24  yourselves first, and then I guess the plaintiffs will just have
25  to tell me what their position is about dealing directly with
```

15

1    Mr. Lindley when you call me back.

2         MR. BECK:  Judge, on that -- on the referral fees, it's

3    our position that we don't have any idea what Mr. Lindley agreed

4    with his clients on.  Our understanding with Lindley is that

5    this is the money he owes us for the work done by Bridgeway, and

6    he has basically in that March letter just assigned that portion

7    of his fee to us.  So with that said, I think we can get

8    together and work this out, at least on a temporary basis.

9         THE COURT:  Okay.  Well, if there's any characteristics

10   of a prejudgment attachment, though, we've got bond issues and

11   other things, you know, to be thought -- security issues to be

12   considered.  So I'll just let you-all go as far as you can

13   between the three of you or the four of you; and then when you

14   call me back, we'll deal with Mr. Lindley with whatever you've

15   developed up to that point.

16        MR. BECK:  Thank you, Your Honor.

17        THE COURT:  All right.  Good to talk to y'all.  I'll

18   wait to hear back from you.

19        MR. WATTS:  Thank you, Your Honor.

20        THE COURT:  Thank you.

21     (Proceedings concluded at 3:22 p.m.)

22               *  *  *  *  *  *  *  *  *  *

23

24

25

16

1                    COURT REPORTER'S CERTIFICATE

2            I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.

4            This 15th day of February, 2007.

5

6                                    /s/ Risa L. Entrekin
                                     Registered Diplomate Reporter
7                                    Certified Realtime Reporter
                                     Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25